## SHAW *v*. RAILROAD COMPANY.

### SAME *v*. SAME.

1. The trustee to whom a railroad company executed a mortgage upon its property, to secure the payment of its bonds, represents the bondholders in all legal proceedings carried on by him affecting his trust, to which they are not actual parties, and whatever binds him, if he acts in good faith, binds them.

2. If bondholders not parties to the suit in which a decree was rendered in favor of the trustee can, under any circumstances, bring a bill of review, they can only have such relief as he would be entitled to in the same form of proceeding. To avoid what he has done in their behalf, they must proceed in some other way than by bill of review.

3. Except under extraordinary circumstances, the power of the court ough/ never to be exercised in enabling the trustees, where the railroad is unfin ished, to borrow money by means of a receiver's certificates which create *r* paramount lien upon the property, in order to complete the work.

4. Upon a bill filed by the trustees to foreclose mortgages executed by a railroa(company in Arkansas, one upon its road and the other upon its land grant

to secure its bonds the court found that they were valid and subsisting liens, that the whole amount of the bonds was due and unpaid, and decreed that in default of payment of principal and interest, at a specified date, the mortgaged property be sold and the proceeds thereof divided among the bondholders. A large majority in interest of the latter held, subsequently to the decree, and upon full notice, a meeting, at which a committee was appointed to purchase the property for the benefit of the bondholders. The committee accordingly purchased it at the sale. The sale was duly reported to the court, when the purchasers appeared therein and declared, and desired it to be so recorded, that it was their intention to organize a corporation under the laws of the State, to own, hold, and manage the property, and that any bondholder might, within sixty days from such organization, transfer to it his bonds and right to the proceeds of the sale, and become entitled to his proportional interest in the stock of the new corporation upon the same terms and stipulations as any other bondholder; but that said new corporation was not to be prevented thereby from requiring from any bondholder the payment of his proportion of the expenses attending the sale and purchase, and such other sums not exceeding five per cent of the principal of the bonds as it might deem for its interests to require as a condition on which stock should be delivered, provided that the same requirement should be made of all the other bondholders; and, further, that the stipulation should not limit the power of the purchasers to organize the corporation without notice, or of the corporation so organized to mortgage its property or reserve for its own use not exceeding ten per cent of its capital stock. At the same time, the trustees in the mortgages appeared in court and consented to an approval and confirmation of the sale, upon the agreement that the stipulation of the purchasers be embodied in the decree. Thereupon a decree was passed accordingly. The proper conveyance was made, and, as part of the consideration therefor, the decree also provided for the payment or compromise by the new corporation of certain claims against the old company. *Held,* 1. That the fact that some of the trustees were bondholders was not of itself sufficient to render them incompetent to consent to the decree. 2. That a bill filed by two bondholders not impugning the good faith of the trustees, but praying that the decree be reviewed and set aside, was properly dismissed.

APPEALS from the Circuit Court of the United States for the Eastern District of Arkansas.

These cases present the following facts : —

By an act approved Feb. 9, 1853 (10 Stat. 155), Congress granted lands to the State of Arkansas to aid in building a railroad. Power was given the State to sell them only as the road was completed in sections of twenty miles each. If the road was not finished in a specified time, all lands not sold were to revert to the United States. A part of the lands thus donated by Congress were granted by the State to the Little Rock and Fort Smith Railroad Company.

On the 22d of December, 1869, the railroad company executed a mortgage on its railroad, completed and to be completed, to Henry W. Paine and Samuel T. Dana, as trustees, to secure an issue of bonds amounting in the aggregate to $3,500,000, payable Jan. 1, 1890, with interest semi-annually at six per cent per annum, and on the 20th of June, 1870, it executed another mortgage on its land-grant, earned and to be earned, to Paine, Dana, and William B. Stevens, to secure another issue of bonds for $5,000,000, payable April 1, 1900, with interest semi-annually at seven per cent per annum. Each of the mortgages contained this clause : —

"In case default shall be made in the payment of any half-year's interest on any of the said bonds, at the time and in the manner in the coupon issued therewith provided, the said coupons having been presented and the payment of the interest therein specified having been demanded, and such default shall continue for the period of three months after said coupons shall have become due, and been demanded as aforesaid, then and thereupon the principal of all the said bonds shall, at the election of the trustees, become immediately due and payable."

On the 12th of May, 1874, all the bonds provided for in both these mortgages had been put out and one hundred miles of the road built. About sixty miles remained to be completed, and the company was without funds or credit. All interest on the bonds falling due Jan. 1, 1871, and thereafter, was in arrear and unpaid. Thereupon Paine, a citizen of Massachusetts, at that time the only trustee of the mortgage of the railroad, and Paine, Stevens, and Charles W. Huntington, all citizens of Massachusetts, then the trustees of the land-grant mortgage, commenced suits in the Circuit Court of the United States for the Eastern District of Arkansas to foreclose their respective mortgages. In each of the bills the necessary averments of fact were made to entitle the parties to a decree of sale, and the trustees elected to treat the principal of the bonds as due. All the necessary defendants, including certain judgment creditors, were made, and there was nothing at that time in the citizenship of the parties to interfere with the jurisdiction of the court. The first of these cases is the suit upon the railroad

mortgage, and the second that on the land grant.  Afterwards
changes in the trustees were made, so that Charles W. Hunting-
ton and Samuel H. Gookin represented the railroad mortgage,
and Huntington, Gookin, and Samuel Atkins the land grant.
The proper substitutions were made on the record, the new
trustees all being citizens of Massachusetts.

Subsequently, on the 3d of October, 1874, an amendment
was made to the bill for the foreclosure of the railroad mort-
gage, by which Atkins, one of the trustees of the land-grant
mortgage, and other persons, citizens of Massachusetts, were
brought in as defendants to that suit.  The object of this
amendment was to obtain the appointment of a receiver of the
property with a view to raising money on receiver's certificates
to complete the road and save the unearned land grant.  No
such appointment was made, however, and nothing was done
under the amendment.  On the 6th of November, a decree was
entered in each of the cases, finding that the mortgage sued
on was a valid and subsisting lien on the mortgaged property;
that the whole amount of the bonds in each case had been
issued, and, with the interest thereon, was due and unpaid;
and ordering the mortgaged property to be sold unless the
debt, principal and interest, was paid on or before the 10th
of December then next.  Provision was also made in each
case for a distribution of the proceeds of the sales among the
bondholders.

After this decree was rendered, a public meeting of the hold-
ers of both classes of bonds was called in Boston on full notice,
and, as the result of that meeting, George O. Shattuck, Fran-
cis M. Weld, and George Ripley were appointed by parties
representing in the aggregate $6,097,000 of the bonds, to pur-
chase the mortgaged property for the benefit of the bondhold-
ers.  They accordingly appeared at the sale, and became the
purchasers of the railroad for $50,000, and the land grant for
the same amount.  The sale was duly reported to the court on
the 19th of December, when the purchasers appeared and
declared in open court, and desired to have it recorded, that
it was their intention to organize a corporation under the laws
of Arkansas, to own, hold, and manage the property bought at
the sales, and that the holder of any of the bonds secured by

either mortgage might, within sixty days from the time of the organization of the corporation, transfer to it his bonds and his right to the proceeds of the sale, and become entitled to his proportional interest in the stock of the new corporation upon the same terms and stipulations as any other holder of the bonds; but this was not to prevent the new corporation from requiring from any and all bondholders the payment of his proportion of the expenses attending the sales and purchases, and such other sums not exceeding five per cent of the principal of the bonds as it might deem for its interests to require as a condition on which the stock should be delivered, provided that the same requirement should be made of all the other holders of bonds, and provided further, that this stipulation should not limit the power of the purchasers to organize the corporation without notice, or of the corporation so organized to mortgage its property, or to reserve for its own use an amount of its capital stock, not exceeding ten per cent thereof. At the same time, the several trustees appeared in court and consented to a confirmation of the sales upon the agreement that the stipulations of the purchasers thus given be embodied in the decrees approving and confirming the sales. Thereupon appropriate orders of confirmation containing the required stipulations were entered, and the proper conveyances made. In the order confirming the sale under the land-grant mortgage, it was provided that the new corporation should, as part of the consideration for the conveyance, compromise or pay such claims against the old company as Huntington, Ripley, and Henry A. Whitney might within one year approve, and upon such terms and in such manner as they should prescribe.

On the 22d of February, 1875, Charles H. Richardson, Frank Shaw, and David S. Greenough, of Boston, representing themselves to be holders of a large amount of the bonds, filed their petition in court, asking that the decree of confirmation might be modified by striking out the clause requiring payment of the claims against the railroad company, and that the provisions of the decrees relating to the exchange of bonds for stock in the new corporation might be extended until the question of modification should be decided. As one of the grounds of this application, it was alleged that Weld and Atkins were

creditors of the railroad company. This petition was answered by the several trustees explaining the facts. On the 13th of April, the time for exchanging bonds for stock in the new corporation was extended for sixty days, and the order for the payment of claims against the railroad company so modified as to make the approval of a claim by the court necessary before it could be paid, and providing for notice to Richardson, Greenough, and Shaw whenever a claim was presented for allowance.

On the 6th of July, 1875, Greenough, as owner of $58,000 of the bonds, and Shaw, as owner of $11,000, filed in the Circuit Court, in each of the cases, what is denominated a bill of review, in which they ask that the decrees be reviewed and reversed, and they placed in the same situation they would have been if the decrees had not been rendered. The errors complained of relate to the sufficiency of the allegations in the original bills; the confirmation of the sales, by the consent of the trustees, upon the terms stipulated for; a want of jurisdiction in the court, as the complainants and many of the defendants were citizens of the same State; and the rendition of a decree against the railroad company, without service of subpœna, after filing the amended bill. It was also alleged that Gookin and Atkins, trustees of the mortgages, were holders of bonds secured by the respective trusts. Demurrers to both bills were filed, which the court below sustained, and dismissed the suits. Shaw and Greenough thereupon appealed.

*Mr. B. C. Brown*, for the appellants, cited *Clearwater* v. *Meredith*, 1 Wall. 25; *Vose* v. *Bronson*, 6 id. 452; *Jackson* v. *Ludeling*, 21 id. 616; *Thomas* v. *Brockenborough*, 10 Wheat. 146.

*Mr. C. W. Huntington*, contra, cited *Whiting* v. *Bank of the United States*, 13 Pet. 6–15; *Crawshay* v. *Soutter et al.*, 6 Wall. 739; *Galveston Railroad* v. *Cowdrey*, 11 id. 459; *Twin Lick Oil Co.* v. *Marbury*, 91 U. S. 587; *Kerrison, Assignee*, v. *Stewart et al.*, 93 id. 155; *Buffington* v. *Harvey*, 95 id. 99; *Sage* v. *Central Railroad Co.*, 99 id. 334; *West et als.* v. *Davis*, 4 McLean, 241; *Smith* v. *Chicago & Northwestern Railroad Co.*, 18 Wis. 17; *Carpenter* v. *Catlin*, 44 Barb. (N. Y.) 75; Hill, Trustees, 152, note and cases cited.

MR. CHIEF JUSTICE WAITE, after stating the facts, delivered the opinion of the court.

We think it clear that the appellants are not entitled to the relief they ask. They were not parties to the original suits, except through their trustees, against whom they make no charges. Indeed, their counsel says in his brief, "It is probable that they [the trustees] believed that they were doing the best possible for their beneficiaries." The trustee of a railroad mortgage represents the bondholders in all legal proceedings carried on by him affecting his trust, to which they are not actual parties, and whatever binds him, if he acts in good faith, binds them. If a bondholder not a party to the suit can, under any circumstances, bring a bill of review, he can only have such relief as the trustee would be entitled to in the same form of proceeding. To avoid what the trustee has done in his behalf, he must proceed in some other way than by bill of review. All the errors complained of in these bills of review, as occurring before the confirmation of the sale, are such as affect only the railroad company injuriously. If, in fact, they are errors at all, they were in favor of the trustees and those they represent, and not against them. Of these the trustees could not complain. As no relief was granted under the amendment to the bill in the foreclosure of the railroad mortgage, the court clearly had jurisdiction of that case for the purposes of the decree as rendered.

But if the bills, as filed, are original in their character, to set aside the decrees complained of and not for review only, the appellants are in no better condition. The trustees had an undoubted right to commence these suits when they did, and it is apparent from the whole record that all their proceedings, both before and after the sale, were in the interest of their beneficiaries generally, since one hundred and eighty in number, representing in the aggregate eight million out of the eight million five hundred thousand dollars of bonds outstanding, accepted the result and exchanged their bonds for stock in the new corporation. To allow a small minority of bondholders, representing a comparatively insignificant amount of the mortgage debt, in the absence of any pretence even of fraud or unfairness, to defeat the wishes of such an overwhelm-

ing majority of those associated with them in the benefits of their common security, would be to ignore entirely the relation which bondholders, secured by a railroad mortgage, bear to each other. Railroad mortgages are a peculiar class of securities. The trustee represents the mortgage, and in executing his trust may exercise his own discretion within the scope of his powers. If there are differences of opinion among the bondholders as to what their interests require, it is not improper that he should be governed by the voice of the majority, acting in good faith and without collusion, if what they ask is not inconsistent with the provisions of his trust. This company and these trustees were peculiarly situated. The road was unfinished, and the land grant, to a large extent, unearned. While the mortgages, as they stood, were first liens, there was great danger that their value would be seriously impaired unless more money could be raised. The attention of both the trustees and bondholders was called to that fact, and at first it seems to have been thought that the end might be accomplished through the instrumentality of a receiver and receiver's certificates. This necessarily contemplated the creation of a lien on the mortgaged property superior to that which then existed. Although the mortgages were separate, and on separate properties, the value of each depended, to a large extent, on the ability of the railroad company to finish its road.

For some reason the idea of a receiver and receiver's certificates seems to have been abandoned, and what, to our minds, was a much more desirable plan adopted. The power of the courts ought never to be used in enabling railroad mortgagees to protect their securities by borrowing money to complete unfinished roads, except under extraordinary circumstances. It is always better to do what was done here whenever it can be; that is to say, reorganize the enterprise on the basis of existing mortgages as stock, or something which is equivalent, and by a new mortgage, with a lien superior to the old, raise the money which is required without asking the courts to engage in the business of railroad building. The result, so far as incumbering the mortgage security is concerned, is the same substantially in both cases, while the reorganization

places the whole enterprise in the hands of those immediately interested in its successful prosecution.

The bare fact that some of the trustees were holders of bonds secured by their trust is not sufficient of itself to make them incompetent to consent to such a decree as was rendered. From the whole case it is apparent that from the beginning their conduct was governed by the wishes of a very large majority of bondholders. If there was anywhere the slightest evidence of fraud or unfaithfulness, their conduct would be carefully scrutinized. The acts of trustees when personally interested should always be open and fair. Slight circumstances will sometimes be considered sufficient proof of wrong to justify setting aside what has been done. But when every thing is honestly done, and the courts are satisfied that the rights of others have not been prejudiced to the advantage of the trustee, the simple fact of interest is not sufficient to justify the withholding of a confirmation of his acts.

Here the name of Gookin, one of the trustees, appears in the list of bondholders appointing the committee to make the purchase at the sale as the holder of two hundred thousand dollars of the bonds. Associated with him in the list were others representing near six millions of dollars. His name openly appeared on the paper when the court was asked to confirm the sale on the conditions agreed to. Certainly this is not sufficient to defeat the plan to which he and his associates gave their consent. Atkins, another trustee, was a creditor of the company, whose debt came within the provision made in the decree for payment by the new corporation. All this was fully explained to the court when the modification of the decree in this particular was asked for, and since no claim can now be paid except with the approval of the court after notice to the appellants, we see no reason why what has already been done is not sufficient for the protection of all concerned.

On the whole, we see no reason for interfering with the decrees below, and they are each, therefore,

*Affirmed.*