HUNTINGTON and others, Trustees, v. LITTLE ROCK & FT. S. R. Co. and others.* (No. 138.)

SAME v. SAME. (No. 139.)

(*Circuit Court, E. D. Arkansas.* April, 1882.)

1. EQUITY — DECREE CONCLUSIVE — FORECLOSURE OF MORTGAGE — RAILROAD BONDS.

Where the holders of railroad bonds, in an action to foreclose the mortgage given to secure payment thereof, were represented by their trustees, and appeared in the cause and sought and obtained certain orders, were heard from time to time upon questions affecting their interests, and contested the valid-

*See 7 Sup. Ct. Rep. 517.

ity of the final decrees by filing bills of review and prosecuting the same to the supreme court of the United States, the decree passed in such suit is conclusive upon them.

2. SAME—FINAL DECREE, HOW MODIFIED OR SET ASIDE.

Final decrees in equity may be modified or set aside (1) by appeal within the time prescribed by law ; (2) by bill of review filed within the time allowed by law for an appeal, charging error apparent upon the record; and (3) by original bill charging fraud or newly-discovered evidence.

In Equity.   Demurrer to petition filed after final decree.

*B. C. Brown* and *Moorfield & Story,* for complainants.

*C. W. Huntington,* for respondents.

McCRARY, J.   These cases are before the court upon demurrer to the petitions of Frank Shaw and David S. Greenough, filed therein after final decrees, and praying certain relief.   The facts, so far as we deem it necessary to state them, are as follows:

(1) These suits were severally brought in 1874 to foreclose the railroad and land-grant mortgages, which had been previously executed by the defendant railroad company, and they were instituted by the trustees named in the mortgages for the use and benefit of the holders of the bonds secured by the mortgages.   The present petitioners were bondholders.

(2) On the sixth of November, 1874, decrees were rendered foreclosing the mortgages and ordering the sale of the mortgaged property for the purpose of paying the mortgage debt, with interest and costs.

(3) On the tenth of December, 1874, the properties described in the mortgages were separately sold by the master, for $50,000 each, to George O. Shattuck, Francis M. Weld, and George Ripley, who purchased on behalf of and in trust for the bondholders.   These sales were duly reported to and confirmed by the court on the nineteenth day of December, 1874.   The decree of confirmation in the suit upon the railroad mortgage, No. 138, recites that—

"George O. Shattuck, Francis M. Weld, and George Ripley, the purchasers of the property sold under said decree, being severally personally present, declare and state in open court, and desire the same to be entered of record, that it is their intention, immediately upon the confirmation by this court of the aforesaid sale, to organize a corporation under an act of the general assembly of the state of Arkansas, approved December 9, 1874, entitled 'An act supplementary to an act entitled an act to provide for a general system of railroad incorporation, approved July 23, 1868;' which corporation shall own, hold, and manage the property conveyed under the aforesaid sale, as well as the lands and property conveyed, or to be conveyed, under the sale held by virtue of the decree rendered on the sixth day of November last past in the suit of *Charles W. Huntington, Samuel H. Gookin, and Elisha Atkins, Trustees,* v. *Little Rock & Fort Smith R. Co. et al.,*—No. 139 upon the docket of this court; and that any holder of the bonds secured by the mortgage foreclosed by this suit, as well as of the bonds secured by the mortgage foreclosed by the aforesaid suit numbered 139, shall, upon the transfer of his bonds and his right to any of the proceeds of the sales of the railroad or land grant, under the aforesaid decrees in said suits numbered 138 and 139, within sixty days from the date of such organization, unless further time shall be given by the court, be enti-

tled to his proportional interest in the stock of said new corporation, upon the same terms and stipulations as any other holder of said bonds; but this shall not prevent such new corporation from requiring from any and all holders of said bonds the payment of his proportion of the expenses attending said sales and purchases, and such other sums, not exceeding five per cent. on the principal of said bonds, as said corporation may deem it for its interest to require as a condition upon which said stock shall be delivered: provided, that the same requirement be made of all the other holders of said bonds: and provided further, that this stipulation shall not limit the power of the aforesaid Shattuck, Weld, and Ripley to organize said corporation without notice, or of the corporation so organized to mortgage its property, or to reserve for its own use an amount of its capital stock not exceeding ten per cent. thereof."

And the decree in the suit upon the land-grant mortgage, No. 139, contained substantially the same recitals.

(4) The following order was also made a part of said decree of confirmation in No. 139:

"That said corporation shall, as part of the consideration of such conveyance, compromise or pay such claims against the Little Rock & Fort Smith Railroad Company as C. W. Huntington, George Ripley, and Henry A. Whitney may within one year from the date hereof approve, and on such terms and in such manner as they may prescribe."

(5) On the twenty-second day of February, 1875, the above-named petitioners, Shaw and Greenough, and one Richardson, filed their petition in the land-grant suit, praying that the provision of the decree of confirmation last above quoted be stricken out, and for an extension of the time within which bond-holders might elect to take stock in the new corporation, until the question whether such modification should be ordered could be decided. Issue was joined upon this petition, a hearing had, and at the April term, 1875, the court refused to modify the decree of confirmation in the manner desired by the petitioners, but added to the provision last above quoted the words "Subject to the approval of this court," so as to require the acts of the committee appointed to settle claims against the railway company to be approved by the court; and the court further ordered that 20 days' notice of the application for such approval should be given to the petitioners or their solicitors, and that they should be allowed to appear and oppose such approval, and to introduce evidence. It was further ordered that petitioners, and all other bondholders who had not yet expressed their assent to the action of the trustees and the decree of the court, by taking stock in the new company, have the further time of 60 days in which to elect whether they would become members of this new company, or take their proportional share of the moneys in court.

(6) The petitioners did not elect to become stockholders in the new corporation upon the terms prescribed by these decrees and orders, but in July, 1875, they filed their bills of review to set aside the decrees of sale and confirmation for alleged errors appearing upon the face of said decrees. To these bills of review the respondents demurred, and, upon hearing, the demurrers were sustained and the bills dismissed. The petitioners appealed from the decrees dismissing their bills of review to the supreme court of the

United States, and, upon hearing in that court, said decrees were, on the fifth of April, 1880, affirmed.

(7) The committee appointed to adjudicate claims against the railroad company made their awards, as required by the decree, which, after notice to petitioners and a hearing, were confirmed.

(8) The master who made the sales made his final report, which was approved and confirmed by decree of the court, rendered in 1876.

(9) After the decision of the supreme court above mentioned, to-wit, on the nineteenth day of October, 1880, the petitioners filed their petitions now under consideration, in which they aver that, in declining to comply with the terms of the decree of this court, and in filing their bills of review to set aside the same, and in appealing from the decree of this court dismissing said bills of review, they acted upon the advice of counsel, honestly believing that said sales were improperly made, and that the decrees confirming them should be set aside. The petitioner Greenough set forth, as an additional reason, so far as he is concerned, that he was unable to comply with the terms of the decrees, for the reason that the bonds held by him were held in trust for parties who were unable to supply any money, etc. What the petitioners desire is that they may now be permitted to make their election, to surrender their bonds and take stock in the new corporation, and such is their prayer. The trustees demur to these petitions, and thereby raise the question whether the court has jurisdiction to entertain them.

It is entirely clear that no proceeding whatever by the petitioners can be entertained as a part of the original suits. By the final decrees no right was reserved to any of the parties, or to any others interested, to apply for further orders, and the court reserved no right to make such orders.

Final decrees were rendered more than five years ago. It is now too late to inquire whether they were in all respects equitable and just; but that they were so is fully established by the decision of the supreme court of the United States affirming the decree of this court dismissing the bills of review. *Shaw* v. *Railroad Co.* 100 U. S. 605. That these decrees are final, and that they are conclusive upon the petitioners, is a proposition too plain for argument. The petitioners, as bondholders, were represented in those suits by their trustees; they were also cognizant of the proceedings, and they appeared in the cause and sought and obtained certain orders; they were heard from time to time upon questions affecting their interests, and they contested the validity of the final decrees by filing bills of review and prosecuting the same to final decision in the supreme court of the United States. Final decrees in equity may be modified or set aside in either one of three modes: (1) By appeal within the time prescribed by law; (2) by bill of review filed within the time allowed by law for an appeal, charging error apparent upon the rec-

ord; and (3) by original bill charging fraud or newly-discovered evidence. The petitioners chose to adopt the second method of contesting the decrees in question, and they are concluded by the adverse decision of the supreme court. It is, therefore, entirely clear that the petitioners have exhausted their remedy, so far as it was to be had by any form of proceeding in the original suits, and that if they have any remaining rights which a court of equity will enforce, they must seek relief by an independent and original proceeding, in which they must assert no right or claim in hostility to, or inconsistent with, the adjudications already had. It is not necessary, at present, to determine whether, in an original procedure, the petitioners can show themselves entitled to relief without seeking a modification of the original decrees. What has been said disposes of the question now before us. The demurrer to the petition is sustained, and the petition will be dismissed. See *Pacific R. R.* v. *Missouri Pac. Ry. Co.* 2 McCrary, 227; [S. C. 3 FED. REP. 772.]

CALDWELL, J., concurs.