## MEYER ET AL. *v.* UTAH AND PLEASANT VALLEY RAILWAY CO.

FORECLOSURE SALE, OBJECTIONS TO, ON MOTION TO SET ASIDE.—Upon an application to set aside a judicial sale made pursuant to and in full compliance with a valid decree of a court directing it, objections to the sale, based upon errors in the decree or committed by the court anterior to it, can not be considered.

ID.—WHO MAY APPLY TO SET ASIDE.—Where a railroad has been sold by the trustees of a mortgage thereon, under a decree of a court directing the sale, a bondholder, not a party to the action, can not be heard on a motion to set aside the sale upon the ground of fraud between the trustees and the purchaser in procuring the decree of foreclosure, or that the trustees were interested in the purchase, and that the property was sold for a price grossly inadequate to its value.

APPEAL from the first district court. The opinion states the facts.

*Williams & Young,* for Price, the petitioner and appellant.

The defense made to the charges of collusion and fraud in the appellant's petition consists of bare denials, while the facts constituting such fraud remain. This is not enough, and should the court be satisfied that there was in fact no corrupt intention in what was done, yet this can not affect the legal conclusion it is bound to draw from the facts shown to exist: *Hawley* v. *Cramer,* 4 Cow. 731, 732.

That the purchase is for a grossly inadequate price clearly appears from the evidence, and this circumstance is neither to be lost sight of nor disregarded by the court: 2 Jones on Mortgages, sec. 1641.

But aside from all questions of fraud, collusion, or inadequacy, there still remains one objection to this sale which we insist is controlling and incurable, and that is the interest of the trustee Lowe, in the purchase of the property.

That it was purchased for the Denver and Rio Grande Western Railway Company we think can not be successfully controverted. That it went immediately into its possession, and that it has ever since used and operated the property as its own, appropriating the income, is beyond all controversy.

That George A. Lowe is a stockholder and an interested party in that company is admitted.

No doctrine is better settled in equity than that a trustee who sells a trust estate, and becomes himself interested either directly or indirectly in the purchase, the *cestui que trust* is entitled as of course to have the sale set aside; and it makes no difference in the application of the rule that the sale was at public auction, *bona fide,* and for a fair price. No contrivances nor indirections will save him when he has done so. The intervention of third parties, so far from assisting him, does but make his case worse, since the intervention of others shows the consciousness of guilt: 4 Kent's Com., 12th ed., 438, and note *c; Michoud* v. *Girod,* 4 How. 503; S. C., 16 Curt. Dec. 188; 2 Jones on Mortgages, secs. 1876–1878; *Wormley* v. *Wormley,* 8 Wheat. 421; S. C., 5 Curt. Dec. 469; *Dorsey* v. *Dorsey,* 6 Am. Dec. 506; *Armstrong* v. *Campbell,*

24 Id. 556; *Devane* v. *Fanning*, 2 Johns. Cas. 252; *Fox* v. *Mackreth*, 1 Eq. Lead. Cas. 188, and notes, and cases cited, especially pp. 238–243; *Stephen* v. *Beall*, 22 Wall. 329; 2 Pomeroy's Eq. Jur., secs. 956–958.

The principle is the same whether the trustee stand alone or is one of many: 1 Eq. Lead. Cas. 241, and cases cited; *Goodin* v. *Cin. & Whitewater Canal Co.*, 18 Ohio St. 169.

We submit that the sale of the defendant's property ought to have been set aside, that the court below in refusing to do so erred, and for that error we ask this court to reverse the order of the district denying appellant's motion to vacate and set aside the sale, and also the order of said court confirming said sale.

*Bennett, Harkness & Kirkpatrick*, and *Sutherland & McBride*, for the respondent.

The appellant moved the district court to vacate the sale herein on the grounds of inadequacy of price and fraud.

Inadequacy of price is not sufficiently shown by appellant's affidavits, uncontradicted, and the proofs fail to establish it. The petition was made more than three months after the sale, and the affidavit still later. Both allege inadequacy in a general way, and that the property is worth double, etc. This was after fifty thousand dollars in improvements had been added, and after the occurrence of events enhancing the prospective value of the road to certain parties. If Mr. Sharp was willing to bid five hundred thousand dollars at a resale, the proof shows it was on account of changes in prospective value after the sale, for he knew of the sale, and he would not—at least did not—attend and bid.

If such affidavits are *prima facie* sufficient on the ground of inadequacy, then there are few judicial sales which could not be opened. The opposing affidavits completely disprove inadequacy.

It is conceded that inadequacy of price alone, unless so gross as to be evidence of fraud, is not sufficient for opening a sale, and we cite no authorities on that point.

The petition in respect to the charge of fraud is very vague, but we think it was intended to charge fraud in two ways: constructive fraud (irrespective of actual intent), aris-

ing out of the relation of the parties; and actual fraud by conspiracy to deplete the property and affect the sale.

We claim no facts sufficient to show constructive fraud are set forth; also that the proofs entirely disprove it.

The alleged facts are, that Lowe, one of the trustees who made the sale, and the one who actually struck off the property, was vice-president of and a stockholder and director of the Denver and Rio Grande Western Railway Company, and that Spackman purchased for that company. Assuming these facts to be true, they do not affect the right of the trustees to make the sale.

We do not dispute the rule in equity that a trustee to sell can not be interested directly or indirectly in the purchase, and that, in many cases, the rule applies to public as well as private sales, and to agents, attorneys, and trustees of all classes. A stockholder of a purchasing company is not within the rule. To avoid a sale under this rule, one of two things must exist: an interest direct or indirect in the property purchased, or the proceeds of the property; or an agency or power to act for the purchaser in the matter of the sale. Lowe had neither.

As a stockholder, he had no interest in the property purchased, or its proceeds. Until a dividend is declared, a stockholder has no interest, at law or in equity, in any property of the company, and his interest is then limited to the specific dividend assigned to him: 57 Me. 143; 99 Mass. 101; 44 Ind. 509; 104 U. S. 454.

The stockholder has no interest in the property of his company, but merely a right to profits declared, and in certain cases, in equity, a right to restrain prejudicial management by the company and to enforce a proper administration of its affairs. The case of *Haines* v. *Oakland*, 104 U. S. 450, shows when the stockholder may invoke the aid of equity to enforce a due administration of corporate affairs, and then it is the rights of the company which he is permitted to represent and enforce. There must necessarily be some limit as to the nature of the interest of the trustee, and also with reference to its remoteness. If remote, contingent, and speculative probabilities of interest should disqualify, it would be a serious restriction on public sales. There can be no

question that a stockholder may sell to, buy of, or in any wise deal in his own behalf with his company, and if so, why can he not as agent or trustee of another ? A mere stockholder has no fiduciary relation to his company or in the management of its business, and stockholders have no fiduciary relation to each other, but deal together as strangers : 44 Ind. 509.

In every case where the sale has been opened on account of interest of the trustee in the bid, there has been, at or before the sale, some contract or understanding for an interest, or a knowledge of his relation to the bidder from which an interest in law would accrue. These things are absent here, and in their absence we find no case holding the sale will be opened, and even find no case holding a stockholder's rights in a corporation bidder is such an interest as to open a sale.

The fact that Lowe was vice-president of the railway company is immaterial, unless by virtue of the office he had power to act or was acting for the company in the purchase; and there is no claim of this kind. The mere fact that he was an officer would not forbid his dealing directly with the company: 88 N. Y. 1; 91 U. S. 587; *Rolling Stock Company* v. *Railroad,* 34 Ohio St. 450 ; *Shaw* v. *Railroad Co.,* 100 U. S. 605.

If the question of constructive fraud is considered in connection with the proofs, it wholly fails. The sale was by the two trustees, though Mr. Lowe personally cried off the property. Mr. Meyer had no connection with the railway company, and Lowe was a nominal stockholder.

The sale was not to the railway company or to any one acting for that company. Mr. Lowe did not know until the property was struck off who was buying, and Spackman was then named as the purchaser, and the deed was made to him. Spackman bought with the property of and for the construction company.

Besides, the rule cited by appellant is not applicable in all cases of public sales, and without reference to the contract, knowledge, and interest of the parties. The parties may contract for a sale by an interested party. A mortgagee with a power to himself may sell. If he also becomes a purchaser, the legal title passes, subject only to a right to

redeem if redemption is tendered in a reasonable time: 21 Cal. 329.

The mortgagee may purchase when a statute directs what officer shall sell: 6 Minn. 168. An execution creditor may buy: 2 Jones on Mortgages, sec. 1882.

On foreclosure in equity the mortgagee may usually buy. Sometimes the right is given by statute, and sometimes by the decree; but the practice is so common that giving it is a mere formality. It is common practice for the beneficiary under trust deed to purchase. By agreement in the mortgage, the mortgagee may purchase under a power to himself to sell: 45 N. Y. 71.

When a mortgagee purchases under a power to himself, he may deed to himself under the power: 118 Mass. 554.

A pledgee, under his contract, always sells, or employs his own agent to do so.

By the deed of trust, power was conferred on two trustees to sell. The deed also provided for a removal of the trustees and the appointment of others, who should have the same powers, etc. Among those powers is the power of sale. The decree of court merely directed an execution of this power in the manner provided in the deed. The trustees, therefore, sold under the power, and which had all the efficacy of a power granted to them by name, and confirmed by the decree of the court: 45 N. Y. 71; 18 How. 143.

The facts alleged in the petition are insufficient to show actual fraud, and the proofs do not establish the alleged facts.

TWISS, J.:

This suit is brought in the first district court by Louis H. Meyer and George A. Lowe, trustees, to foreclose a mortgage or trust deed given by the defendant upon its railroad and other property to secure the payment of a series of nine hundred bonds of one thousand dollars each, issued and negotiated by the defendant; and on the 21st day of February, 1882, judgment and decree was rendered, foreclosing the mortgage upon the corporate franchises of the defendant, upon its railroad running from Provo City to the coal-fields in Pleasant valley in this territory, upon all of its rolling stock and equipments, and upon all its lands, hereditaments,

and appurtenances, including the interest of defendant in all coal-lands and coal-veins, and all buildings, offices, tracks, and fixtures of every nature, and used in connection with said coal mines owned by or in trust for the defendant, in townships 12 and 13 south, of range 7 east, in said territory of Utah, and formerly in San Pete, but now in Emery county. The plaintiffs, Meyer and Lowe, were by the said decree declared to be the lawfully constituted trustees of said deed of trust, and as such, and upon the trusts therein mentioned, vested with the title to the properties, rights, and franchises described in said deed of trust, and were authorized to sell the same. It also appears by the record that in an action then pending in said court, wherein William M. Spackman was plaintiff, and the Utah and Pleasant Valley Railway Company and Thomas C. Platt were defendants, a judgment was rendered by the court on the twenty-fourth day of April, 1882, decreeing that the east half of the south-east quarter of section 8, and the west half of the north-west quarter of section 33, and the west half of the south-west quarter of section 28, and the south-east quarter of the north-west quarter, and lot No. 5, and the south half of the north-east quarter of section 6, all in township 13 south, of range 7 east, of Salt Lake meridian, containing four hundred and sixty-six and forty-eight hundredths acres, more or less, be sold by a receiver, and that the plaintiff Lowe was appointed such receiver for that purpose; that the avails of such sale be applied in payment of such judgment; and further adjudging that the sale so made shall transfer and be a bar upon the defendant, the Utah and Pleasant Valley Railway Company, as to all right, title, interest, use, beneficial interest, and right of possession of said company in and to the premises so sold; and also transfer and be a bar upon the defendant Thomas C. Platt, as to all the right, title, and interest acquired by him, or which he has or holds in trust or otherwise, by or under the deeds to him from Goss and Cochrane.

It also further appears by the record that the sale so decreed was made by the said receiver on the eleventh day of July, 1882, for the sum of forty thousand dollars, to William M. Spackman, he being the highest bidder, and that being the highest sum that was bid for the same; that he made pay-

ment for the same by paying cash to the amount of one hundred and thirty-five dollars and twenty-five cents; that the balance thereof, thirty-nine thousand eight hundred and sixty-four dollars and seventy-five cents, was credited on a judgment in favor of said Spackman against said railway company, pursuant to the directions of said decree. The record further shows that the mortgage or deed of trust, to foreclose which this suit is brought, provides "that the said trustees, or either of them, may be removed by instrument of writing, under the hands and seals of a majority in interest of the outstanding bonds secured hereby. * * * That in case at any time hereafter either of the said trustees, or any future trustee hereafter appointed, shall die or resign, or be removed as herein provided, or by a court of competent jurisdiction, or become mentally incapacitated to execute the trust, a majority in amount of the holders of the then outstanding bonds issued hereunder shall have the right and power by instrument in writing, under their hands and seals, to appoint a new trustee to fill such vacancy." That on the thirty-first day of August, 1881, William Spackman was the owner and holder of four hundred and eighty-two bonds, amounting in the aggregate to four hundred and eighty-two thousand dollars, exclusive of interest, and constituting a majority in number and interest of all the bonds secured by the mortgage or deed of trust, removed the said De Graaf and Wilkins from the office and position of trustees under said mortgage and deed of trust, and constituted and appointed the plaintiffs, Louis H. Meyer and George A. Lowe, to be and act as trustees under the said mortgage or deed of trust, in the place and stead of De Graaf and Wilkins, removed as aforesaid, to take and hold the estate and trusts thereby created, declared, or conferred, upon like terms and conditions, and subject to the same rights and powers, duties and obligations, as by said deed of trust or mortgage conferred upon the persons named as trustees, and in all things to fully execute the trusts.

It also appears by the record, that, pursuant to the judgment in this case, the plaintiffs Meyer and Lowe, trustees, on the twelfth day of June, 1882, sold all the property in this cause decreed to be sold, for the sum of two hundred and fifty thousand dollars, which was paid partly in cash and the re-

mainder in bonds and coupons, pursuant to the decree of said court.

On the eighteenth day of September, 1882, Linus M. Price comes into court, by his attorneys, and files a paper, duly verified, which in the record is called a petition, although it contains no prayer for relief, or for any order or degree or judgment of the court, in which he states that he is the duly appointed and acting receiver of the Pacific National Bank of Boston, and that as such receiver he is the legal custodian and possessor of the property of said bank. That among the assets of said bank are ninety-nine first-mortgage bonds of the Utah and Pleasant Valley Railway Company, of the denomination of one thousand dollars each, dated September 14, 1878, a part of the series of bonds described in and secured by the deed of trust or mortgage for the foreclosure of which this suit is brought.

That De Graaf and Wilkins, the original trustees named in the mortgage or deed of trust, were on the thirty-first day of August, 1881, without notice and without cause, removed from said trust by Spackman, who at the time claimed to be the owner and holder of a majority of the bonds, and on the same day he appointed and constituted the plaintiffs Meyer and Lowe to thereafter be and act as trustees under said mortgage or deed of trust, in the place and stead of De Graaf and Wilkins theretofore removed.

He further alleges that Spackman, in June and August, 1881, recovered judgment against the Utah and Pleasant Valley Railway Company in two suits, particularly described, for the aggregate sum of one hundred and fifty-three thousand and thirty-seven dollars and forty cents; that in November, 1881, Spackman brought suit against the defendant Utah and Pleasant Valley Railway Company upon these judgments, and against Thomas C. Platt as the holder of the legal title to certain coal-lands belonging to the defendants, and in said mortgage and deed of trust theretofore conveyed to trustees as part security for said bonds; and by said last-named suit sought to have said coal-lands sold, and the proceeds thereof applied to satisfy the judgments last mentioned; that judgment by default was rendered, and plaintiff Lowe was by the court appointed receiver of the coal-lands and property, with

order to sell the same, who, on the eleventh day of July, 1882, sold said coal-lands for forty thousand dollars, which was applied in part satisfaction of the Spackman judgments.

Price further alleges that no defense was made to the bill of foreclosure, but default was made, and judgment and decree was taken in accordance with the prayer of the complaint.

That on the twelfth day of June, 1882, in pursuance of said decree, said railroad property and coal-lands were sold to Spackman for the sum of two hundred and fifty thousand dollars; that said property was purchased by Spackman for and on behalf of the Denver and Rio Grande Railway Company, which is now and ever since has been in the possession of the same, using and operating it, and applying the proceeds thereof to its own use.

That George A. Lowe, on the thirty-first day of August, 1881, at the time he was appointed trustee under said mortgage or trust deed, was and ever since has been and is now a stockholder, vice-president, and director in the Denver and Rio Grande Railway Company, and its most active promoter in Utah. That the price paid for the franchises, property, and coal-lands was grossly inadequate, and that said property is worth at least double that sum, which was well known to Lowe and Spackman and the Denver and Rio Grande Railway Company at the time of sale.

Price further alleges, on his information and belief, " that the said plaintiffs have not proceeded in the execution of their trust in such a manner as to be most advantageous to the holders of said bonds; but on the contrary, avers that for the purpose of advancing the interests of themselves, the said Spackman and the Denver and Rio Grande Western Railway Company, they have conspired and colluded with said Spackman and the officers and agents of said railway company, and the plaintiffs herein, to deplete the property of the said defendant covered by the said mortgage, by subjecting a portion thereof, to wit, the coal-lands aforesaid, to the payment of the said judgments in favor of Spackman, in fraud of the rights of this petitioner as such receiver, and the other holders of said bonds not included in said scheme. That this petitioner resides in Boston, in the state of Massachusetts, and had no knowledge or information of the institution of

this action until after the sale of the said property had taken place.   And he further says that in case a resale is ordered he will bid or cause to be bidden for the said property the sum of five hundred thousand dollars.   He further says that he is informed and believes, and alleges the truth to be, that John Sharp of Salt Lake City, in said territory, is willing to and will in the event of a resale bid the sum last aforesaid for said property."

Upon this paper, called a petition, the records and papers on file in this action, the report of sale, the papers on file in and the records of the court in the cases of *Spackman v. Utah and Pleasant Valley Railway Company and Thomas C. Platt*, a motion was made in behalf of said Linus M. Price, receiver, etc., to vacate and set aside the sale of the property of the defendant made , by the plaintiffs Meyer and Lowe on the twelfth day of June, 1882, which motion was overruled, and the sale was confirmed by the court, on motion of the plaintiffs, from which order and decision of the court Price appealed to this court.

The counsel for appellant, with much severity, criticises the displacement of De Graaf and Wilkins, the original trustees named in the deed of trust, and the appointment of Meyer and Lowe in their place and stead.   But the court in its decree specifically decrees "that the plaintiffs Louis H. Meyer and George A. Lowe, since the thirty-first day of August 1881, have been and still are the lawfully constituted trustees of said deed of trust, and vested as such trustees and upon the trusts therein mentioned with the title to the properties, rights, and franchises described in said deed of trust, and as such trustees are also vested with all the rights and powers granted to and subject to the duties imposed on the original trustees and their successors by said deed of trust."

In light of this extract from the decree or judgment, it is clear that the fault in this regard, if any there be, inheres in the decree of the court, and not in the sale under such decree.

Counsel also criticises the transactions of the trustees in regard to the coal-lands, claiming that it was their duty to see that the coal-lands actually acquired by the defendant, as well as the net profits arising from working them, should be applied according to the terms of the mortgage.

But it will be seen, by examination of the notice and report of sale under the decree in this cause, that the sale was made in all respects pursuant to said decree; and that all the interest of the defendants in the coal-lands was so sold, and therefore if any fault was committed as to this particular property, it inhered in the decree of the court, and not in the sale. It is true that by the decree of the court in the case of *Spackman* v. *Utah and Pleasant Valley Railway Company et al.,* the court rendered judgment against the railroad company for the sale of its interest in the coal-lands. But if this decree was wrong (upon which we express no opinion), the wrong was in the judgment of the court, and not in making a sale under it. We think that neither this nor any of the other matters complained of by the appellant as to any decree of the court could be remedied by a motion to set aside the sale made under and in pursuance of the decree of foreclosure, which is final until annulled or reversed: *Bullard* v. *Greene,* 10 Mich. 268; *Crawford* v. *Tuller,* 35 Id. 57.

We are, therefore, not required to examine any question growing out of the decisions of the court other than the order of the court overruling the motion to vacate and set aside the sale for errors committed in executing the decree. Errors in the decree, or committed by the court anterior to it, are all matters which were duly considered by the court, and a motion to set aside a sale made under the decree is not a correct way of reviewing the proceedings of the court, as there is no claim that the judgment and decree is invalid.

The district court having decided that Meyer and Lowe were trustees of the mortgage, they are to be regarded as such in all proceedings upon this motion; they are the legal representatives of all the bondholders, no one of whom is permitted by motion to interfere with the proceedings of the court. In *Shaw* v. *Railroad Co.,* 100 U. S. 605, Waite, C. J., in the opinion of the court, said: "The trustee of a railroad mortgage represents the bondholders in all legal proceedings, carried on by him affecting his trust, to which they are not actual parties, and whatever binds him, if he acts in good faith, binds them." If the trustees combined with others to defraud the bondholders, or any of them, or if they did not act in the good faith required of them, a remedy might doubt-

less be had in a suit properly brought for that purpose, making all persons interested parties, by proving the fraud in a trial on issues correctly framed; but a mere motion to vacate and set aside a sale by a person not a party to the record is an improper and inadequate mode of trying such important matters as are involved in these proceedings: *Ward* v. *Clark,* 6 Wis. 509.

We are of the opinion that the order of the district court in overruling the motion to vacate and set aside the sale, and in sustaining the motion to confirm the sale, should be and is affirmed.

HUNTER, C. J., and EMERSON, J., concurred.