### FLETCHER v. ANN ARBOR R. CO. et al.

#### (Circuit Court of Appeals, Sixth Circuit. July 8, 1902.)

#### No. 1,030.

1. MORTGAGES—FORECLOSURE BY TRUSTEE—SALE—FRAUD OF RECEIVER—RIGHTS OF BENEFICIARY.

   The beneficiary in a mortgage deed made to and foreclosed by a trustee cannot avoid the sale, after confirmation and distribution of the proceeds, on the ground that by the fraud of the receiver appointed by the court to make the sale the property was sold for less than it was worth, and was bid in by a syndicate, of which the receiver was a member, no neglect, fraud, or collusion being charged against the trustee; as the beneficiary, in the absence of fraud or neglect on the part of the trustee, is bound by whatever would bind the latter.

Appeal from the Circuit Court of the United States for the Northern District of Ohio.

The Merchants' National Bank of Baltimore, Md., filed a bill of complaint against the Ann Arbor Railroad Company, the Toledo, Ann Arbor & North Michigan Railway Company, Wellington R. Burt, and the Metropolitan Trust Company, on behalf of itself and all other beneficiaries, setting up that the complainant owned two bonds of the Toledo, Ann Arbor & Mt. Pleasant Railway Company upon which there was due $1,314.06, the payment of which bonds had been assumed by the Toledo, Ann Arbor & North Michigan Railway Company; that on the 27th day of April, the defendant Wellington R. Burt was appointed receiver of the Toledo, Ann Arbor & North Michigan Railway Company in a suit which, with others, was consolidated under the title of the "Farmers' Loan & Trust Company v. The Toledo, Ann Arbor & North Michigan Railway Company et al."; that the receiver, on the 2d day of July, 1895, sold the railway property under a decree of the court; that it was the duty of the receiver to sell the property so as to bring the highest possible price, but that he misrepresented the physical condition of the road, saying that the company had "no road at all,—that they had a couple of streaks of rust running across Michigan, and part of it under water, and it was not worth a cent unless they would put money into it"; that the receiver had inspected the road, and had peculiar and exclusive means of knowing its condition, and the prospective purchasers lived at a remote distance from it, and were ignorant of its condition, and these prospective purchasers believed what the receiver said; that in fact the railroad was in a much better condition than represented by the receiver, and that by his misrepresentations and deceit he caused the prospective purchasers and the public to believe that the railroad property was much less valuable than it was; that said Burt purchased in his own name and for his own benefit, a large amount of bonds of the Toledo, Ann Arbor & North Michigan Railway Company, and entered into an arrangement with certain bondholders to form a syndicate to pur-

chase the railroad property and to become the owners; that, in order to purchase the property at as low a price as possible, he had depressed the market value, and he and his associates were enabled, through the fraud of Burt, to purchase the property for $2,627,000, when in fact the property was worth $10,000,000; that the sale was confirmed on the 8th day of July, 1895, and the Ann Arbor Railroad Company was immediately formed and issued bonds to the amount of $7,000,000, and common and preferred stock to the amount of $7,250,000; and that the receiver was one of the largest bondholders of the new corporation, which is now operating and claims to own the railroad property; that knowledge of the fraud alleged in the bill of complaint had only recently come to the complainant, and then, on the 28th day of November, 1898, the complainant notified the Toledo, Ann Arbor & North Michigan Railway Company, and the directors and stockholders thereof, to commence a suit to set aside said sale, and unless they brought such suit the complainant would bring it; that the Toledo, Ann Arbor & North Michigan Railway Company is utterly insolvent, and has no property out of which claims of creditors can be made on execution. The complainant asks that the sale and decree under which it was executed be set aside, and that a receiver be appointed to take possession of the railroad property, and that the claims against the property be ascertained. On motion the service of process on the defendant Burt was set aside, and he was dropped as party defendant. Afterwards the bill was amended, setting up that the Craig Shipbuilding Company, John Craig, the Farmers' Loan & Trust Company, and the Central Trust Company were necessary parties, and the complainant was allowed to make them parties defendant. Afterwards, by leave of the court, an amendment to the bill was filed, substituting Austin B. Fletcher as complainant, he having bought the two bonds owned by the complainant; and the amended bill also sets out that the substituted complainant, in addition, owns sixteen bonds, of the par value of $16,000, of the Toledo, Ann Arbor & North Michigan Railway Company, which bonds he owned prior to and at the time of the judicial sale complained of. The amended bill also states that the persons constituting the syndicate who purchased the property at the judicial sale knew the facts, and knew that by means of the misrepresentations of the receiver the property was being subjected to sale under gross misinformation as to its real value, and that they combined with the receiver to carry out the fraudulent scheme for their own benefit and to the detriment of those interested as bondholders, stockholders, and creditors of the Toledo, Ann Arbor & North Michigan Railway Company. The amended bill also states that the Farmers' Loan & Trust Company and the Central Trust Company, respectively, were the grantees in the mortgage deeds of the Toledo, Ann Arbor & North Michigan Railway Company and its constituent companies, and were thereby constituted trustees for and on behalf of the holders of the bonds issued concurrently with and secured by the respective mortgages. In other respects, the amended bill was substantially similar to the original bill. A demurrer was filed to this amended bill of complaint, which was sustained. After it was sustained, another amended bill was sought to be filed, but the petition in that behalf was denied, and from the decree dismissing the bill of complaint on demurrer and the order denying the petition to file an amended bill of complaint the complainant appealed.

Harvey Scribner, for appellant.
Alex. L. Smith and Benton Hanchett, for appellees.

Before LURTON and DAY, Circuit Judges, and WANTY, District Judge.

WANTY, District Judge, after making the foregoing statement, delivered the opinion of the court.

It does not appear by the bill of complaint that the Farmers' Loan & Trust Company, the grantee in the mortgage deed of the Toledo, Ann Arbor & North Michigan Railway Company, and the Central

Trust Company, the grantee in the mortgage deeds of the constituent companies, had any part in the fraud, and there are no allegations in the bill in this case showing that they in any way neglected the duties imposed upon them. The mortgages given by the Toledo, Ann Arbor & North Michigan Railway Company and its constituent companies to the Farmers' Loan & Trust Company and the Central Trust Company, as trustees for the bondholders, made those trust companies the parties through which all of the bondholders were required to act. All the rights the bondholders had in the mortgages or the property represented by them they obtained through the trust companies, and they had no other interest except that which the trust companies represented for their benefit. The trustees were necessary parties to the foreclosure suit, and so long as they acted in good faith all of the bondholders for whom they acted must be bound by what was done, either for their benefit or detriment, in that proceeding. The Farmers' Loan & Trust Company began that suit, and carried it to a conclusion, selling the property at a price fixed by the court, which sale was, in the regular course of the proceedings, confirmed, and the proceeds were distributed. There is no allegation in the bill that the trustees did not act in good faith or were negligent in protecting the rights of the beneficiaries on whose behalf the present bill was filed. In the absence of such allegations this complainant has no right to file a bill to set aside the proceedings in which it was represented by its trustees. If the sale which is sought to be set aside bound the trustees, it must necessarily, in the absence of fraud or bad faith on the part of the trustees, bind this complainant. If there was fraud, the trustees should have opposed the confirmation of the sale, and, not having opposed it, this complainant, as well as the trustees, were bound by it.

In Richter v. Jerome, 123 U. S. 233, 246, 8 Sup. Ct. 106, 31 L. Ed. 132, Mr. Justice Waite, for the supreme court, said:

"All the rights the bondholders have or ever had in the mortgage, legal or equitable, they got through the trust company, to which the conveyance was made for their security. As bondholders claiming under the mortgage, they can have no interest in the security except that which the trustee holds and represents. If the trustee acts in good faith, whatever binds it in any legal proceedings it begins and carries on to enforce the trust, to which they are not actual parties, binds them. Kerrison v. Stewart, 93 U. S. 155, 160, 23 L. Ed. 843; Corcoran v. Canal Co., 94 U. S. 741, 745, 24 L. Ed. 190; Shaw v. Railroad Co., 100 U. S. 605, 611, 25 L. Ed. 757. Whatever forecloses the trustee, in the absence of fraud or bad faith forecloses them."

It was said in Kerrison v. Stewart, 93 U. S. 160, 23 L. Ed. 843, above cited, that "the trustee is in court for and on behalf of the beneficiaries; and they, though not parties, are bound by the judgment, unless it is impeached for fraud or collusion between him and the adverse party." See, also, Kent v. Iron Co., 144 U. S. 75, 90, 12 Sup. Ct. 650, 36 L. Ed. 352. In the absence of allegations of neglect, collusion, or fraud on the part of the trustees in the mortgages, this bill could not be sustained, and the decree dismissing it on demurrer was correct.

An amended bill was presented after the demurrer was sustained, but it contained no allegations of fraud, collusion, or neglect on the part of the trustees, and therefore the refusal of the court to allow it to be filed was proper. As this defect appeared in each of the amended bills presented to the court below, and was fatal to the complainant's case, it is unnecessary to discuss the allegations of fraud or the other questions presented by counsel.

The decree below is affirmed.