JOSIAH J. WHITE, Respondent, v. GEORGE C. WOOD et al., Appellants.

Upon foreclosure of a mortgage executed by the C. R. Co., a Kentucky railroad corporation, to secure its bonds which, to the amount of $994,000 were then outstanding, the property was bid in by defendants under an agreement which provided that they should purchase as trustees, for the benefit of the bondholders, who in pursuance of the agreement had deposited their bonds with a trust company, receiving receipts therefor. In case defendants should fail to sell they were authorized to organize a new corporation, in which event the stock of the new corporation was to be issued to and divided among the holders of the receipts, "in proportion to the number of bonds deposited, for which the receipts were issued, upon the surrender * * * of such receipts." The agreement also provided that defendants " shall have full power and authority to make due provisions, in their discretion, in case of any defect of their express powers, and shall, nevertheless, proceed to carry out the true intent, meaning and purpose of the agreement by conforming as near as may be to the provisions thereof." Also, that "they shall determine all questions that may arise concerning the construction and effect of any provisions" of the agreement, and that their "determination shall be final and conclusive." Having failed to sell within the time designated defendants filed articles of incorporation, which fixed the capital stock of the new corporation at the same amount as the stock of the old company, i. e., $2,000,000; of this amount $994,000 was to be issued to the holders of the receipts in consideration of the conveyance

to it of the property; the residue to be disposed by its board of directors.. By the laws of Kentucky the purchasers of a railroad at a foreclosure sale are authorized to become incorporated, the corporators to provide in their articles for the issue of paid-up capital stock not to exceed "the original cost of the construction of the railroad and equipment, and such sums as may be necessary to complete the same." Defendants bid in the property at $750,000, and fixed its cost or value at the amount of the bonds, and the new articles provided for the completion of the road. In an action by a bondholder, among other things for an accounting on the part of defendants, *held* that, in the absence of evidence of bad faith, defendants were not guilty of any violation of the duty they owed the bondholders for which they could be held liable.

A portion of the relief asked for in the complaint and granted by the judgment of the court below was that defendants be restrained from conveying the property to the new corporation. It appeared that the conveyance was made by deed executed and delivered before the commencement of the action. *Held*, that this portion of the judgment was ineffectual for any purpose.

The judgment also restrained the issuing of the stock of the new company over and above the $994,000. Neither said company nor any of its directors was made parties. *Held*, that this portion of the judgment also was ineffectual.

(Argued December 8, 1891; decided January 20, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made February 9, 1891, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

This was an action to restrain defendants from conveying or turning over the franchise and property of the Chattaroi Railway Company to any person or corporation, except the Ohio Big Sandy Railroad Company, and then only upon the issuing of its stock of $2,000,000 and distribution thereof *pro rata* among the bondholders of the former company, and from receiving the sum of $56,000 for their expenses and disbursements in the matter, and for an accounting of the moneys received by defendants while running the said Chattaroi railway as trustees for said bondholders and for other relief.

The facts, so far as material, are stated in the opinion.

*Wheeler H. Peckham* for appellant. The General Term erred in holding that the acts of defendants in organizing the new company with a provision in the articles that the capital stock should be $2,000,000, and that but $994,000 thereof should be issued to the old bondholders, was unauthorized by the trust agreement and a breach of trust, irrespective of the question of good faith. (*Shaw* v. *R. R. Co.*, 100 U. S. 611; *People* v. *Colman*, 126 N. Y. 433; *Williams* v. *W. U. T. Co.*, 93 id. 188; *Hollister* v. *Stewart*, 111 id. 664.) The plaintiff alleges and shows no damage. (*Johnson* v. *Morgan*, 68 N. Y. 494.)

*William J. Gaynor* for respondent.

O'BRIEN, J. The judgment in this case is based upon acts of the defendants, claimed to be in violation of their duty as trustees, and done in bad faith. The Chatteroi Railway Company, a Kentucky coporation owning a railroad in that state, had issued one thousand bonds of $1,000 each, secured by two several mortgages to the Union Trust Company of New York. There were nine hundred and ninety-four of these bonds outstanding when the company made default in the conditions of the mortgage, and it was foreclosed by suit in the United States Circuit Court in Kentucky, and the road and its equipment sold, and purchased by the defendants for the benefit of the bondholders. The defendants, in making the purchase, acted under the terms of a written agreement between themselves and the holders of the bonds, bearing date February 15, 1887. This agreement provided, among other things, that the bondholders should deposit them with the trust company, subject to the order of the defendants, for use in the purchase of the property, and should receive therefor the receipts of the trust company. The bonds were so deposited, the receipts given and used in the purchase of the property at the foreclosure sale. The agreement between the defendants and the bondholders, which prescribes at length and in specific terms the powers and duties of the defendants as the purchasing com-

mittee and trustees for the bondholders, also provided that, in case the defendants purchased the mortgaged property, they might sell the same, within a fixed time, at a price named, which was to be deposited with the trust company for the benefit of the bondholders, and that the defendants should operate the road until the sale could be made, or a new corporation organized to take and operate the road. The defendants were authorized to organize a new corporation in case they failed to sell the road, and in that event it was provided that: "The stock of such company shall be issued to and divided among the holders of the receipts issued by the trust company hereunder, in proportion to the number of bonds deposited, for which the receipts were issued, upon the surrender to the said trust company of such receipts." The defendants did organize a new company, under the laws of Kentucky, but did not deliver the whole authorized capital stock to the bondholders, and in this respect, it is claimed, they failed to perform their duty as trustees under the agreement. There are some other clauses of the agreement, following the one above quoted, which must be read with it in order to get a clearer idea of the question. It was provided that the defendants "shall have full power and authority to make due provisions, in their discretion, in case of any defect of their express powers hereunder, and shall, nevertheless, proceed to carry out the true intent, meaning and purpose of this agreement by conforming, as near as may be, to the provisions thereof," and further, "They shall determine all questions that may arise concerning the construction and effect of any provision of this agreement, which determination shall be final and conclusive in every case."

The defendants having failed to sell the railroad within the time designated, filed articles of incorporation in the proper county clerk's office in Kentucky, but did not make publication of the same as required by the laws of that state in order to create a corporation, and in fact, within a month after such filing, notified the clerk that the articles were abandoned, and new articles were filed August 23, 1889.

Under the articles first filed, the capital stock was to be $2,000,000, subject to be increased by a majority of the stockholders to any sum necessary to complete and equip the road, not exceeding $10,000,000. An amount not exceeding $2,000,000 of the stock was to be issued as paid-up capital stock, in exchange for the trust company receipts issued upon deposit of bonds by the holders. By the articles of incorporation last filed, and under which the new corporation was created, the capital stock was also fixed at $2,000,000, and the only material difference in the provisions of the two articles, in so far as concerns this case, was in the clauses providing for the issue of the capital stock. The articles first filed provided for the immediate issue and distribution among the holders of the trust company receipts, representing the surrendered bonds, of not exceeding $2,000,000 of stock, in consideration of the conveyance to the company to be organized thereunder, of the mortgaged property by the defendants, while in the articles filed subsequently, but nine hundred and ninety-four thousand dollars of stock was to be issued and delivered to the holders of the receipts in consideration of the conveyance by defendants of the property purchased at the foreclosure, and the residue of the stock might "be disposed of from time to time by the board of directors at its discretion, and is to be paid in from time to time upon calls by the board of directors." The organization of the new company having been thus completed, under their charter the defendants conveyed to it the property purchased by them at the foreclosure sale by a deed dated August 20, 1889, acknowledged by the grantor on the same day, and by the grantee August 24, 1889, and on this latter date delivered to the grantee. It was recorded in two counties of Kentucky. In one of them, August 30, 1889, and in the other, September 2, 1889, and this action was commenced August 26, 1889. The plaintiff was the owner of twenty-seven of the bonds secured by the mortgage, under foreclosure of which the defendants, as trustees for him and the other bondholders, acquired the road, and those bonds he surrendered as provided for by the trust agreement, and took in their

place the trust company receipts, and was, therefore, entitled to his equitable proportion of the capital stock of the new company. He brought this action to restrain the transfer of the road to the new company by the defendants. On the trial, the only evidence given by the plaintiff was the trust company receipts, which showed his interest in the subject-matter of the controversy. The judgment, among other things, restrains the defendants from collecting a note given to them by the new company for $56,800. With reference to this note, the allegation of the complaint is that it was given to the defendants by one Collis P. Huntington upon an agreement with him, whereby the defendants, in violation of their trust duty, and for the purpose of benefiting themselves personally, agreed to procure for him, in consideration of said note, a majority in value of the bonds at fifty per cent par value, and, thereupon, turn the new corporation over to him. The finding of the trial court is that the note was given to defendants by the new corporation " as part and parcel of the attempt of the defendants to so transfer the said franchise and property to the said new incorporation in violation of their said trust." There seems to be no conflict in the evidence in regard to the consideration of the note, and that is to the effect that it was given to the defendants by the new corporation for the purpose of repaying advances made by the defendants for actual expenses of the committee in the performance of the trust and one or two items of estimated expenses, and, after paying these, the surplus, if any, represented by the note, was to be paid back to the corporation that made it. Nor is there any dispute as to the fact that the deed by defendants, of the property to the new corporation, was actually delivered to it before the suit was commenced. This is conceded in the opinion at General Term. The judgment, therefore, enjoined the defendants from doing what had already been done ; and, aside from the feature which impounds the note, in which the plaintiff has no interest whatever, the only effect that the judgment can have is possibly to enjoin the issue of the stock over and above the nine hundred and ninety-

four thousand dollars, and as neither the new railroad corporation nor any of its directors are parties to this action, it is difficult to see how it accomplishes even that. There does not seem to be any basis upon which that part of the judgment enjoining the transfer and the payment of the note can rest. But the more important question in the case is whether it has been shown that the defendants actually committed any breach of duty as trustees, or in any material respect violated the trust agreement to the plaintiff's damage. It is not found or claimed that the mere filing of the first articles of incorporation, in July, 1889, had the effect of bringing any new corporation into existence. It seems that, under the laws of the state where they were filed, no such result followed. Something more remained to be done before a corporate entity was created, which was not done, and the attempt to create a corporation by this filing was abandoned and new papers filed in their place, which, it seems, resulted in the creation of the new corporation, which the defendants are enjoined from conveying to.

The plaintiff, evidently, would not deem himself aggrieved at all had the defendant proceeded under the articles first filed. Then he would have his share of two millions of stock; now he has only his share of nine hundred and ninety-four thousand dollars of stock. But although the stock in the first case would, on paper, express a larger interest in shares in the new road than that issued under the last articles, yet, in both cases, the actual property to be represented by the stock to be issued to the bondholders was precisely the same. When the bondholders of the old road became stockholders in the new one, they were to have their *pro rata* interest in the road which the defendants purchased for them and no more. No matter at what sum the new road was capitalized whether at two millions or nine hundred and ninety-four thousand dollars, what the plaintiff was entitled to was the same proportion of the stock issued to represent the property purchased by the defendants as his twenty-seven bonds bore to the whole amount of the bonds secured by the mortgage foreclosed. Had the

capital stock of the new corporation been fixed at the value of the property purchased by the defendants then all the shares would go to the bondholders. In executing that part of the trust which provided for the organization of a new corporation, to operate the road, the defendants were required to proceed according to the laws of the state in which the property was and under which the corporation was to be created. The express powers conferred on defendants by the trust agreement were general and all the details necessary to be considered, when a new corporation was to be brought into existence, were not specified, but, notwithstanding this, the defendants were to go on and " carry out the true intent, meaning and purpose of this agreement by conforming as near as may be to the provisions thereof." The precise question then is whether the defendants, as trustees, disregarded the agreement and violated their duty, when organizing the new corporation, in providing for the issue to the bondholders of only nine hundred and ninety-four thousand dollars of stock instead of two millions. The agreement required the defendants to issue to the bondholders the stock of the new company. But what did the parties mean by these terms? Clearly the stock of the new company, within the contemplation of the parties, was nothing else than the old road or in other words the property purchased at the foreclosure sale by the defendants. There was no other property in which the bondholders were jointly interested or which could be divided and distributed to them. Now the defendants in proceeding to discharge the duty of organizing a new corporation were bound, under the laws of Kentucky, to provide in the articles for the amount of capital stock authorized and the time when and the conditions upon which it was to be paid. The laws of that state authorizing the purchasers of railroads, at foreclosure sale, to become incorporated authorized the corporators to provide in the articles for the issue of paid-up capital stock not to exceed " the original cost of the construction of the railroad and equipment purchased, and such sum as may be necessary to complete the same." Now the paid-up capital stock, which the bond-

holders were entitled to receive, could not exceed the original cost of the road purchased with its equipments. The defendants bid in the property at $750,000. In the articles they fixed its cost or value at the amount of the original bonds, namely $994,000, and provided for the issue to the bondholders of paid-up stock to that amount, in proportion to their original interest as represented by the receipts of the trust company. Had they intentionally fixed the amount of paid-up capital stock to be issued to the bondholders, at less than the value of the property purchased, then the plaintiff would have a right to complain, but it is not suggested that the defendants did that, but the new articles provided, not only for the operation of the road, but also, in conformity with the laws of Kentucky, for the completion of it. This could not be done without more capital and so the articles provided that other stock, up to two million dollars, might be issued by the board of directors and sold for money or other proper consideration. The bondholders were not entitled to this stock unless they paid for it. The defendants fixed the capital of the new road at just what the capital of the old one was and they fixed that part of it which was to be considered paid up, by the purchased property, at the amount of the bonds used in its purchase and they say that they have the plaintiff's proportion of that paid-up stock to give to him whenever he will take it. That all the other holders of bonds for whose benefit the defendants purchased the property have taken the stock and ratified the defendants' acts. When we consider the broad powers, contained in the trust agreement, conferred upon the defendants, to some of which we have referred, and the laws of the state under which the defendants were to act, we think they are not liable, providing that they acted in good faith. If the provision in the articles incorporating the new railroad, for the issue to the bondholders of paid-up stock to the extent of nine hundred and ninety-four thousand dollars, was the result of an honest construction of their powers, under the laws of the state where the corporation was to be created, it would be unjust to hold them liable upon some narrow or technical con-

struction of the agreement or the meaning of the law that they were obliged to act under. (*Shaw* v. *Railroad Co.*, 100 U. S. 605; *Hollister* v. *Stewart*, 111 N. Y. 644.)

The complaint alleges and the trial court found that they did not act in good faith but on the contrary acted in bad faith, and to this finding the defendant excepted. We have carefully examined the record and are unable to find any evidence in it to uphold the finding and we are referred to none by the plaintiff's counsel. He stated on the trial that he relied on the case made by the pleadings, but they nowhere contain any admission of bad faith, on the part of the defendants. On the contrary they gave evidence at the trial that they acted in good faith.

The judgment should, therefore, be reversed and a new trial granted, costs to abide the event.

All concur, except Peckham J., not voting.

Judgment reversed.