### JEWELL v. McINTYRE et al.

(Supreme Court, Special Term, Kings County. November, 1900.)

CORPORATIONS—CONSOLIDATION—CONTRACT.

A contract between J., a holder of stock and bonds in the H. Milling Co., and M., recited that M. proposed the formation of a corporation with $25,000,000 capital and $15,000,000 bonds to acquire and unite under one control the H. Flour Mill and the flour mills in certain cities, the capacity of which was 90,000 barrels a day, authorized a committee, "in case of said organization being carried into effect," to exchange the stock and bonds of J. for stock and bonds of the new corporation, "share for share of stock * * * and bond for bond of like amount," stipulated, however, in order that the scheme should be carried out, only the said mills, "or so many of said mills or others as may be considered advantageous by the organizers," should be acquired, and provided that the amount of bonds and stock of the new corporation should be subject to change in case of acquisition of more or less of the properties. Held, that the committee was authorized to make the exchange though mills of a capacity of only 39,000 barrels a day were acquired, the stock and bonds of the new corporation being proportionally less, and though title to the H. Mill was not acquired, but only 95 per cent. of the stock therein and 40 per cent. of its bonds, the H. Co. being controlled by directors elected by the new company, and the bonds of the new company being secured by mortgage on all the property acquired by it, including the bonds and stock of the H. Co. so acquired.

Action by Ora M. Jewell against Thomas A. McIntyre and others to cancel an agreement and to require the delivery back to plaintiff of certain stocks and bonds. Judgment for defendants.

Jacob F. Miller, for plaintiff.

James McKeen, John M. Bowers, Albert Rathbone, and Henry J. Knox, for defendants.

GAYNOR, J. The scheme of McIntyre was to combine and unite under one control as many as possible of the principal flour mills throughout the country. He proposed the formation of a corporation with a capitalization of $12,500,000 in common stock, the same amount in preferred stock and $15,000,000 in bonds, to acquire such properties and pay therefor by its said stock and bonds. The plaintiff was a stockholder and bondholder in the Hecker-Jones-Jewell Milling Company, a flour mill corporation doing business in this state. She and other stockholders in her said company signed an agreement with the said McIntyre in which the said scheme and proposition of the said McIntyre was set forth. The mills which it was proposed to acquire were not referred to therein by name, but in a general way as the mills located in certain named cities, except the said milling company in which the plaintiff was such stockhold-

er and bondholder, which was named specifically. The capacity of such mills was stated in such agreement to be 90,000 barrels of flour a day. But the agreement was not that they should all be acquired in order that the scheme should be carried out, but only that they, "or so many of said mills or others as may be considered advantageous by the organizers," should be acquired; this being immediately followed by the statement, "the amount of bonds and stock" (i. e. of the said corporation to be organized) "to be subject to change in case of acquisition of more or less of the properties, or for other reason, but always to be approved by the committee herein appointed, or a majority of them, representing the interests of the bondholders and stockholders of the Hecker-Jones-Jewell Milling Company." This was followed by the agreement on the plaintiff's part that "in order to facilitate and assist the said McIntyre and his associates in the organization of said corporation and the acquisition of said properties," she would deposit her common and preferred stock and her bonds in the said Hecker-Jones-Jewell Milling Company with the Franklin Trust Company which is designated as trustee for her and the said organizers; and the said trust company and committee are then "authorized, in case of said organization being carried into effect," to exchange the plaintiff's said stock and bonds for the stock and bonds of the new corporation, "share for share of stock of the same class and bond for bond of like amount." The new corporation was formed, and it is conceded that it acquired in the manner provided by the said agreement 15 flour mills throughout the country. It claims also to have acquired the four mills of the said Hecker-Jones-Jewell Milling Company, but this is disputed by the plaintiff. It did not acquire all of the mills mentioned in the said agreement. The capacity of all the mills so acquired and claimed to be acquired is 39,000 barrels a day. The said committee appointed by the said agreement approved of the completed scheme on the basis of the mills so acquired, including those of the Hecker-Jones-Jewell Milling Company, and exchanged the said stock and bonds of the plaintiff and her fellow stockholders in the Hecker-Jones-Jewell Milling Company for like stock and bonds in the new corporation, in the manner provided by the said agreement, they having previously deposited them with the said Franklin Trust Company under the said agreement.

This action is based on the allegation of the plaintiff that the scheme of the said agreement was never carried out, in that all or substantially all of the mills mentioned in the agreement were not acquired, and especially in that the mills of the Hecker-Jones-Jewell Milling Company were not acquired; and that the said committee for that reason committed a breach of trust in exchanging her stock and bonds for stock and bonds of the new company. She accepted such new stock and bonds about May 1, 1899, but says that at that time she did not know that all of the mills had not been acquired. She prays that such breach of trust be established, that the said agreement be annulled, and that her stock and bonds be restored to her on her surrender of those she received in exchange.

Inasmuch as the agreement did not require the organizers (i. e.

McIntyre and his associates) to acquire all of the mills referred to therein, but only mentioned that it was proposed to acquire them, and left it to the judgment of the organizers to acquire "so many of the said mills or others" as they should consider advantageous, and left the amount of the capitalization of the new company to be made less or more than the proposed $25,000,000 of combined common and preferred stock and $15,000,000 of bonds, according to the number and earning capacity of the mills which should be so acquired, the said committee cannot be held to have committed a breach of trust by the simple fact of exchanging as they did the plaintiff's stock and bonds for the new stock and bonds. The new company was organized on a capitalization much smaller than the proposed $40,000,000 of stock and bonds in accordance with the proportionate value and earning capacity of the mills actually acquired. The committee examined into the value and earning capacity of the properties acquired and the capitalization of the new company in respect thereto, and were guilty of no negligence or breach of trust in respect thereof, nor do I understand anything to the contrary to be claimed.

The new company acquired 95 per cent. or more of the common and preferred stock of the Hecker-Jones-Jewell Milling Company by exchanging its stock therefor in the manner provided for in the said agreement with the plaintiff. It then elected directors of the said company, and in that way controls the said company and its properties. The plaintiff contends that this was not a substantial acquisition of the properties of that company, and that nothing short of a conveyance to the new company of such properties could be, or could authorize the said committee under the terms of the said agreement to exchange the plaintiff's stock and bonds for the stock and bonds of the new company. It seems to me to have been a substantial acquisition of such properties. The agreement does not mention any particular method of acquisition, and the method of acquiring the stock of the corporation was not only an effectual method, but the usual one in the carrying out of such schemes. The agreement contemplated the acquiring of corporate properties in that way, as well as by the taking of conveyances, leases and bills of sale. This is made plain by the provision thereof empowering the said committee to vote on the stock of the said Hecker-Jones-Jewell Milling Company placed within their trust, as aforesaid, "for the dissolution" of the said company, "if it is deemed necessary" in the said scheme of consolidation. Of the $2,500,000 issue of bonds of the Hecker-Jones-Jewell Milling Company, the new company acquired about $1,000,000 thereof by an exchange of its own bonds therefor, and holds about $1,500,000 of its own bonds against the same amount of the said bonds of the said other company which are still outstanding. The bonds of both issues bear six per cent. interest, and unless the security of the new bonds is not as good as that of the old ones, the committee were guilty of no breach of trust in exchanging the latter for the former. This the plaintiff did not prove, and the contrary is fairly inferable from all the facts. They are a first lien on all the property and net income of the new com-

pany. Moreover there is nothing in the said agreement requiring that the said Hecker-Jones-Jewell milling properties, or any of the other properties, should be acquired free of the then existing mortgage indebtedness upon them. The agreement must fairly be held to contemplate that the process of exchanging the bonds and liens held for such indebtedness, for the bonds of the new company, would necessarily take a long time, and even that the holders thereof might not all make such exchange. The mortgage given by the new company to secure its bonds, by its terms covers all the stock and bonds of the Hecker-Jones-Jewell Milling Company surrendered in such exchange, and the said stock and bonds as so received have gone and are to go into the keeping of the Trust Company which is the trustee under the said new mortgage. By this process the lien of the bonds and stock still outstanding of the Hecker-Jones-Jewell Milling Company has not been increased or advanced over the bonds and stock of that company which have been surrendered up, but the latter still hold their place.

In the case of White v. Wood, 129 N. Y. 527, 29 N. E. 835, the facts were that the bondholders secured by a first mortgage on a railroad which was being foreclosed appointed a committee of their number to bid in the property and surrender up their bonds in payment, and to then organize a new corporation at a nominal capital to be fixed by them, and convey the property to it, and divide all of the paper shares of the capital stock of such new corporation among the said bondholders according to their former respective holdings of bonds. This was all clearly expressed in the trust instrument by which the said committee was appointed and empowered. The aggregate of the said bonds was $994,000, and the new corporation was capitalized at $2,000,000. The certificate of incorporation as drawn by the committee, however, only permitted $994,-000 thereof at par to be divided among the former bondholders, the remaining $1,006,000 to remain to be disposed of by the board of directors to whom they pleased. This, as plainly as anything can be, did not put the voting control of the new corporation which was to get their property in the hands of the old bondholders, as the trust agreement so carefully required, but left them in a minority as stockholders, and enabled the directors of the new corporation (who were appointed by the said bondholders' committee) to so dispose of the said majority of the stock as to put the voting control in the hands of others than the said former bondholders, and thus enable such outsiders to elect the next board of directors and control the corporation. Though in plain violation of the terms of the trust agreement, this was held by the court of appeals to be no breach of trust by the bondholders' committee, and the judgment of the plaintiff restraining the committee from thus disposing of the bondholders' property was reversed. If that case did not present a case of breach of trust the present case certainly does not. But tested by the strict and just rule of the later cases of Cox v. Stokes, 156 N. Y. 491, 51 N. E. 316, and United Waterworks Co. v. Omaha Water Co., 164 N. Y. 41, 58 N. E. 58, there seems to be no departure here from the trust agreement amounting to a breach of

·trust. And in the matters left open to the discretion of the committee, they acted in good faith.

Judgment for the defendants.