### REUBEN S. GAW V. GLASSBORO NOVELTY GLASS CO.

1. JUDGMENT CONCLUSIVE OF FACTS WHICH MIGHT HAVE BEEN ASSERTED.

A judgment is as conclusive as to facts which might have been asserted by way of defense or counterclaim as it is upon facts specifically found. Therefore, the decree in a foreclosure suit against a mortgagor and a corporation, upon averments that the latter had purchased the mortgaged property and assumed and promised to pay the indebtedness, the corporation being in default for answer, finding that the "statments of plaintiffs petition are true" and that there is due from the mortgagor and the corporation "the amount claimed in the petition," is conclusive against the stockholders of the corporation as to the assumption of the indebtedness, in a subsequent action to recover an unsatisfied balance, the mortgaged property having failed to satisfy the indebtedness, and such stockholders are thereby precluded from interposing any defense or counterclaim that might have been interposed in the foreclosure suit.

2. COLLATERAL ATTACK—NOT PERMISSIBLE UNLESS JUDGMENT VOID.

A judgment must be void and not merely erroneous to be open to collateral attack. Thus, while it does not appear that a trustee for mortgage bond-holders, by virtue of the mortgage, had authority to do more than subject the mortgaged premises to the payment of the indebtedness, a judgment upon default in a foreclosure suit, brought by such trustee, upon proper allegations, against a corporation purchasing the property and assuming and agreeing to pay the indebtedness, is not void or subject to collateral attack in a subsequent action to . enforce the judgment against stock-holders.

3. AUTHORITY OF TRUSTEE TO PROCEED AGAINST CORPORATION.

Under the circumstances stated, where the mortgaged property was purchased by the corporation which assumed and agreed to pay the mortgage, it is the same as if the corporation had become a party to the mortgage subsequently to its execution by the original mortgagor and it therefore became not only the right but the duty of the trustee to proceed by all proper methods to the foreclosure of the mortgage and to the ascertainment and determination of any and every question that might be legitimately determined in an action of foreclosure, including the ascertainment and determination of the obligation of the corporation arising out of its assumption of the debt.

4. CORPORATION BOUND BY KNOWLEDGE OF AGENT.

Where it appears that, in the purchase of a manufacturing plant, the representative of the purchasing corporation, upon whom the company relied, knew that the deed of the property, in the warranty against encumbrances, excepted a certain mortgage or bonded indebtedness, the corporation is chargeable with notice thereof and by accepting the deed upon the statement of its representative that it was "all right," the corporation is, in absence of fraud or imposition, bound by a stipulation contained therein assuming and agreeing to pay such indebtedness.

5. RIGHT OF ACTION—SUBJECT TO DEFENSES.

The assumption of indebtedness by the corporation, in the purchase above referred to, gave the bond-holders a right of action against the corporation, but this right of action is subject to any defense or counterclaim that might be interposed by the corporation at the proper time, if grantor were the holder of the claims and seeking their enforcement.

APPEAL.

PARKER, J.

This is an action brought by a creditor of the Glassboro Nevelty Glass Company to enforce the statutory liability of the stockholders of that company. All of the facts necessary to a complete decree in the case are agreed upon, excepting those respecting the claims of certain so-called bondholders, *i. e.* creditors who are holding notes that were given by one Christopher W. McLean and made payable to George H. Ketcham, trustee, or bearer, and now held by various persons to whom Ketcham, as trustee, transferred them.

A brief history of the case will be necessary to an understanding of the points involved. We need not go back of September 15, 1888, at which time Christopher W. McLean executed and delivered to George H. Ketcham, as trustee, his thirty so-called bonds, of $500 each, the aggregate being $15,000, payaple to Ketcham, trustee, or bearer, on September 15, 1898, with interest at six per cent. payable semi-annually, these semi-annual payments of interest being evidenced by coupons attached to the respective bonds. At the same time he executed and delivered to Ketcham trustee, his mortgage of that date, securing these notes or bonds on eighty-seven lots and nineteen acres of land in McLean's Glassboro addition to the city of Toledo. This mortgage was duly filed for record and recorded in Lucas county, Ohio. Soon there-after McLean erected a glass iactory on a part of these mortgaged prem-ises.

In the summer of 1889 the Glassboro Novelty Glass Company was incorporated with an authorized capital of $60,000, divided into 600 shares of $100, each. McLean actively promoted the formation of this company, and it appears that he persuaded certain of these defendants who were bondholders to subscribe for stock and become interested in the company.

It appears that it was the purpose of this company to manufacture in this factory a certain kind of prismatic glass, and it was agreed between McLean and the company or, at least, McLean proposed to the stockholders of the company while it was in process of formation, that he would turn over to it certain contracts, which he said he had with an institution in the east, to take all of this prismatic glass that might be manufactured by the company, at certain prices which would return large profits to the company; and this contract, together with the factory and about three acres of this mortgaged property, was to be turned over to the company in consideration of $30,000 to be paid by the company to McLean as set forth in a proposal made in writing by McLean, which I read:

"I, C. W. McLean, hereby agree to sell what is known as the McLean Glass Plant, as it now. stands, located at Glassboro, Toledo, Ohio, together with three (3) acres of land, on which the buildings now stand and surrounding the same, and to assign the contracts made by me with The Alpha Prismatic Glass Company of New York, to The Glassboro Novelty Glass Company of Toledo, for the sum of $30,000 subject to the $15,000 bonded indebtedness which now encumbers the said plant as follows:

| | |
|---|---:|
| Thirty $500 3 10 year bonds bearing 6 per cent. interest, payable semi-annually on the 15th days of March and September.. | $15,000 |
| Amount to account paid in cash.: | 10,000 |
| Amount to be paid in stock | 5,000 |
| Amount of stock to be offered for sale | 30,000 |
| | $60,000 |

Capital stock of said company, $60,000.

C. W. McLEAN.

TOLEDO, O., July 1889.

This proposition is written upon the book of the company in which the stock subscriptions appear, and those who subscribed for stock appear to have been acquainted with this proposal and to have subscribed upon the faith of it.

After the organization of the company and in pursuance of this proposal, a deed was executed by McLean to the company of these three acres of land upon which the factory was located, and this deed was accepted by the company and placed on file. This is a general warranty deed containing covenants against all encumbrances, except as to this mortgage, with respect to which " contains this stipulation: " except a mortgage executed and delivered to George H. Ketcham, trustee, for the sum of $15,000 upon the property herein described, which said grantee assumes and agrees to pay."

There is a question made as to whether the company knew that this stipulation as to the assumption of the indebtedness of $15,000 was in this deed; but we find that the deed was read by a representative of the company, and that he stated to the company, when the stockholders or directors were in session, that the deed was all right, and we find that they relied upon his statement. Since the representative of the company knew what was in the deed on this subject, the company is chargeable with knowledge thereof and, furthermore, under the law, by accepting the deed, the company in the absence of any evidence of fraud or imposition is bound by this stipulation in it. Kerr on Real Property. § 2336.

Under the authorities in this state, this assumption of the debt gave the bondholders a right of action against the glass company. Thompson v. Thompson, 4 Ohio St., 333; Emmitt v. Brophy, 42 Ohio St., 82.

But the stockholders contend that the bondholders have this right (if at all) subject to any defenses or counter-claims that might be interposed by the company if McLean were the holder of the claims and were here seeking their enforcement. In support of this proposition, they cite: Hayes v. Skidmore, 27 Ohio St., 331, which seems to sustain it; and they have also presented some very potent arguments in support of this proposition and we are disposed to the view that it is correct. Then they say that they have such defenses and counter-claims, viz.

That fraud was practiced by McLean in inducing the company to accept an incomplete plant: That he represented to those who became stockholders, and represented to the company, that the plant was complete and equipped for the manufacture of this prismatic glass, whereas it was not complete, but required about $7,000 to put it in condition to manufacture this glass. They say also that he practiced fraud in representing that he was skilled, and experienced as a practical glass man, who understood the manufacture of glass and all that pertained to

it, and that that was not true ; also that he was guilty of fraud in representing that he had this valuable contract with the Alpha Prismatic Glass Company of New York, to take the whole product of the factory, at remunerative rates, and that it was a solvent institution, and that therefore he had a very valuable contract, whereas in fact it was a corporation organized under the laws of New Jersey, where there was no statutory liability or assurance of solvency, and was an insolvent institution, and therefore this contract was not at all valuable. And they say that because of McLean not being a skillful glass man, and because of its being impracticable to manufacture this kind of glass profitably—though McLean represented to the contrary—and because this New Jersey concern was insolvent and failed to take their glass, or to pay for what they did take —that because of these various misrepresentations upon the part of McLean, the concern failed and went to the wall—and so it seems to have done very speedily.  It collapsed and quit business, and this suit is one of the results.

Evidence was heard by this court upon the issue made by these averments of fraud and misrepresentation and the denial thereof.  I will not stop to discuss this, but go to the consideration of another point, our conclusion upon which makes it unnecessary to determine whether these allegations of fraud are well founded.  However, I should add that the stockholders also claim as a defense that this deed contains covenants against any and all incumberances except this one which has been mentioned, but that as a matter of fact there was about $1,000 back taxes on this property, the burden of which has fallen upon this company, and that the claim thus arising should be taken into consideration as an offset against these claims in the hands of these bondholders.

The pleadings do not make up an issue as to this, but we have heard the evidence upon it and have given it consideration.

It is also said that McLean now owns about $10,000 worth of stock or did at the time the company became insolvent—and that if he were enforcing these claims on these bonds he must, as a holder of such stock, bear his proportion of this debt, and hence this proportion should be deducted so that this share will not fall upon the other stockholders. These are, in substance, the claims which are made by the way of defenses and counter-claims in opposition to the claims of the bondholders.

Besides denying the alleged fraud and misrepresentations, the bondholders say that these alleged defenses or counter-claims cannot be considered, for the reason that by the judgment of a court having jurisdiction of the matter it has been determined that the company owes this debt to the bondholders ; that if these alleged defenses ever existed, they were in existence and might have been set up in the case in which this judgment was entered, and that whether then interposed or not, the judgment is conclusive against them so long as it stands unreversed and in full force.

The stockholders deny that the judgment in question has the force and effect claimed for it by the bondholders.  The history of this alleged judgment is as follows : On August 10, 1892, George H. Ketcham, as trustee under this mortgage, began an action in the court of common pleas against Christopher W. McLean, N. R. McLean, his wife,; The Glassboro Novelty Glass Company, and various other defendants, the main purpose of the action being the foreclosure of this mortgage on behalf of the bondholders.  The petition contains all the necessary averments for a foreclosure, and the necessary prayer.  It also contains certain other allegations, which were perhaps not strictly necessary to the foreclosure

of the mortgage, as to the conveyance by McLean to the glass company of the land and lots by the deed before mentioned, and the following: " Said deed contained covenants of warranty on the part of said McLean except the mortgage for the sum of $15,000 executed and delivered to this plaintiff, trustee as aforesaid, which it was by said deed recited that said grantee agreed and assumed to pay. Said deed, duly executed and delivered as aforesaid, was by said corporation left with the recorder of Lucas county for record, on October 14, 1889, and was by him duly recorded in volume 158 of the record of deeds of said county, page 478. Said corporation forthwith took possession of said last described land, and has since had the occupation, use and enjoyment of the same, and still holds the legal title thereto, and, as a part of its said contract of purchase and in consideration of said conveyance, said corporation agreed with said Christopher W. McLean, and with this plaintiff as such trustee, and with the respective holders of said bonds, that they would pay to the respective parties entitled thereto, the principal and interest of the mortgage indebtedness aforesaid, as the same should become due and payable."

The prayer, which is quite full and covers a great many objects to be attained, contains this: " That the court order the respective parties interested in said lands to pay the respective liens so found now due and payable, within a short time, to be by the court limited, and in default of such payment, then that upon the precipe of any party in whose favor such lien has been declared due, or of his attorney, an order of sale issue directing the sale of said respective mortgaged lands as upon execution," etc., and then at the end is a prayer for all proper equitable relief.

The glass company was duly served with process, but it filed no answer in the case, and a decree was entered in part as follows:

" This day came the plaintiff and defendants " naming them and including the glass company", by their respective attorneys, all other defendants being in default of pleading, and no party requiring a jury this cause was submitted to the court upon the pleadings of the parties appearing as aforesaid, and upon the evidence. Upon consideratton whereof, the court finds that the statements of plaintiff's petition are true. That there is due from defendants The Glassboro Novelty Glass Company and from Christopher W. McLean, to plaintiff, for interest upon the bonds in said petition specified."

Then follows a statement of the amount due, and also following that a finding as to the amounts that will in the future fall due upon these obligations from the Glassboro Novelty Glass Company to the bondholders or to the plaintiff as trustee; then, amongst other things, follows an order that unless McLean or the Glassboro Novelty Glass Company should pay this indebtednees, an order of sale should issue for the sale of this three acres owned by the glass company as well as for the sale of the lots and lands still owned by McLean.

There is no question but what if this decree is conclusive against the company, it is equally conclusive as against the stockholders of the company. Freeman on Judgments, sec. 177; 131 U. S., 290; Angell & Ames on Corporations, sec. 615; 1 Beach on Corporations, p. 233, note. Authorities might be multiplied upon this proposition, but these are deemed sufficient.

But the stockholders say that the judgment has no force or validity in so far as it touches the question of the indebtedness of the company to the bondholders because, they say, the trustee had no authority as such to proceed beyond the foreclosure of the mortgage, the subjection of the

mortgaged property, and, incidentally, to have determined such questions and such only as were strictly necessary to the carrying out of his duty in the attainment of this object, and that the determination of the indebtness of the company to the bondholders, or to the trustee for them, was not essential to the foreclosure of the mortgage. That in thus proceeding beyond the authority vested in him as trustee he did not and could not represent the bondholders; that such bondholders were not bound by this finding; that they might have ignored or repudiated it if it had been against them, and that, therefore, since estoppel must be mutual, the company and the stockholders are not bound by this finding: And, in support of the claim that the trustee was not authorized to seek a judicial determination of this question, attention is called to the fact that the mortgage, which, (it is said), confers the only authority possessed by the trustee, limits his duty and authority to the subjection of the mortgaged property by foreclosure to the satisfaction of the debt. I will not take time to read from the mortgage, but we find that that claim is true so far as the mortgage on its face is concerned. It is also pointed out that this claim of the bond holders arising out of the assumption of this debt is something that has arisen out of a transaction subsequent to the giving of the mortgage wherein and whereby authority is given to the trustee, and it is said that this makes it evident that he, not being a party thereto or named therein, has no duty or authority in the premises arising out of this subsequent transaction.

But the question arises here, how is this question of the authority of the trustee in the premises to be determined? Is it to be determined by the evidence that may or may not have been submitted to the court in the foreclosure case, or is it to be determined by the facts asserted in the pleading therein, either directly or by implication, and the judgment thereon? Manifestly under the authorities it is to be determined by the latter method. I have already called attention to the fact that the trustee not only comes into court in that case and asserts his claim, thereby declaring his right to prosecute it, but that he sets forth in the petition that the undertaking of the company to pay this debt was to him as trustee. He does not say that the undertaking is contained in the deed, or that it arises out of anything contained in the mortgage, but says simply that there was an undertaking on the part of the glass company to him as trustee to pay this debt. Upon the question of the effect of this judgment I shall take time to read a few paragraphs or extracts from Van-Fleet's Collateral Attack. I cite the first paragraph in sec. 1, at the bottom of page 2 and at the top of page 3 :

"And as no·one would think of holding a judgment of the court of last resort void if its jurisdiction were debatable or even colorable, the same rule must be applied to the judgments of all judicial tribunals. This is the true theory of judicial action when viewed collaterally. If any jurisdictional question is debatable or colorable, the tribunal must decide it; and an erroneous conclusion can only be corrected by some proceeding provided by law for so doing, commonly called a "Direct Attack." It is only where it can be shown, lawfully, that some matter or thing essential to jurisdiction is wanting, that the proceeding is void collaterally."

Since the judgment in the foreclosure suit involves a determination of the liability of the company on the assumption of this debt, of course this is a collateral attack, and the real question here is as to the jurisdiction

of the court in the foreclosure suit over this branch of the subject matter, and in determining this question we must keep in view the alleged authority of the trustee to present it to the court for adjudication. I read from Sec. 58 :

" The want of a clear conception of jurisdiction has caused much trouble, as the careful reader of the subsequent chapters herein will discover. The principal trouble has arisen from the mistaken conception that jurisdiction depends upon facts, or the actual existence of matters and things, instead of upon the allegations made concerning them. If certain matters and things are alleged to be true and relief prayed which the tribunal has power to grant, if true, that gives it jurisdiction over that proceeding, and it must proceed and determine it or neglect its duty. The matters and things alleged may have no actual existence, yet if the evidence given shows them to exist and the allegations concerning them to be true, the tribunal must grant relief. A mistaken conception of this kind has caused courts to hold that judgment on paid claims, or claims barred by the statute of limitations, were void."

And the author calls attention to the fact that these matters are discussed very fully in sections 61, 62, 63 and 526 to 559, inclusive. A single paragraph from sec. 60:

" Jurisdiction always depends upon the allegations and never upon the facts. When a party appears before a judicial tribunal and alleges that a certain right is denied him, and the law has given the tribunal the power to enforce that right — his adversary being notified — it must proceed to determine the truth or falsity of his allegations. The truth of the allegations does not constitute jurisdiction. The tribunal must have jurisdiction before it can take any adverse step. Its jurisdiction, necessarily, has to be determined from the allegations, assuming them to be true. This point is so important, and will be referred to so often hereafter, that I feel justified in quoting extensively from some well considered cases."

Which the author then proceeds to do. I also read a part of sec. 61:

" In this section it is assumed that the court has the power to grant the relief sought in a proper case, and the question is, do the allegations show such a case? The rule is this: Can it be gathered from the allegations, either directly or inferentially, that the party was seeking the relief granted, or that he was entitled thereto? If it can the allegations will shield the judgment from collateral assault. All the cases agree that if the allegations tend to show, or colorably or inferentially show each material fact necessary to constitute a cause of action, they will uphold the judgment collaterally."

Certain illustrations of this I will take time to note, in sec. 62 :

" An early Indiana case, speaking of a collateral attack on proceedings in partition, said that on the filing of the petition," it became the duty of the court to ascertain—first, whether the facts therein alleged were substantially such as to authorize the remedy petitioned for ; secondly, whether the requisite notice had been given to the other owners ; thirdly, whether the facts alleged were stated with sufficient form and precision ; and, fourthly, whether the statements contained in the petition were true. The Supreme Court of the United States, speaking of a collateral attack on an administrator's sale of land made in obedience to a private statute, said : " In making the order of sale, the court is presumed to have adjudged every question necessary to justify such order or decree—viz., the death of the owner," etc.

And then he calls attention to what is necessary, and continues:

" A judgment by default bars the parties as conclusively, collaterally, as though they had framed issues and had a trial and been defeated. The assumption of jurisdiction and the exercise of authority is a decision upon the question of .notice without any formal entry declaring the notice sufficient. So where an objection was made to the right of the circuit judge to sit in the probate court, his assuming to act ignoring the objection, is an adjudication of his right to do so. The granting of an order to an administrator after approval of his final report, to make a conveyance impliedly determines that he is still administrator and that the approval did not discharge him. Collaterally, an administrator's order to sell land is an implied and conclusive adjudication that the sale was necessary, and that notice was duly given ; and an order granting relief is an adjudication of every fact essential to the validity of the order.

Section 420 lays down the general principles which are illustrated in several of the following sections. I will read it :

" This title treats of the validity of the rights and titles derived through judicial proceedings where they were authorized in law or in fact either on behalf of the plaintiff or of the defendant. When such want of authority is a question of fact the record is always invulnerable collaterally, because it imports absolute verity ; but when it is a question of law, it is likewise invulnerable, if there was any question for the court to decide."

Some of the cases cited by the author are in point, but I cannot take time to read from them. I cite secs. 421, 526, 626, 628 and 629, reading a paragraph from 626 :

" Conceding that a cause of action exists or may exist against the defendant in favor of some person, it does not seem possible that the proceedings can be void because the plaintiff or petitioner is not that person. The court having the power to grant the relief sought, and the defendant being before it and owing that relief to some person, the sole and only point in controversy is whether or not he owes it to the plaintiff. That is a question which the court is competent to decide ; and an erroneous conclusion will not be void."

And many cases are cited and commented upon. Now a majority of this court are of the opinion that the conclusions of the court in the foreclosure case—the finding of the court—as to the indebtedness of this Glassboro company to these bondholders, is not void ; and therefore we hold that it is not open to this collateral attack. That the judgment must be void, and not merely erroneous, in order to render it subject to collateral attack, is clear from the authorities. I call attention to the authorities collected in the opinion of the court in the case of Spoors v. Coen, 44 Ohio St., 497.

That the indebtedness may be determined so as to become a debt of record, and not open to question, in a foreclosure case where no personal judgment is asked or granted, and no execution for balance awarded, is decided in Doyle v. West, 60 Ohio St., 438. I read the first paragraph of the syllabus :

" In a suit to foreclose a mortgage, there was a finding of the amount due and the usual order of sale, if not paid in a certain time named. There was no prayer for a judgment, and none was rendered, and no order for an execution for any balance that might remain after applying the proceeds. A sale was made and after applying the proceeds, a bal-

ance of $102.21 remained.   Held, that an action can be maintained on the finding for the recovery of this balance as a debt evidenced by record."

In the course of the discussion in the opinion by Minshall, Judge, (which should be read in order that the full force of this decision may be appreciated), it is said that this finding becomes binding and conclusive upon the parties and not open to question the same as any other judgment in any other form.   Now that case rules this case, unless evidence *aliunde* is admissible to impeach the judgment or finding: I mean evidence outside of the allegations in the petition and the findings of the court in the foreclosure case to show that the trustee was not authorized to assert this claim, and we are of opinion that such evidence is not admissible.   We have heard evidence in support of that claim, but it cannot be considered and given that effect.   Manifestly, if one is sued upon a demand of which the plaintiff claims to be the owner, and allows judgment to go against him by default, he cannot afterwards collaterally impeach that judgment upon the ground or allegation that the plaintiff was not in fact the owner thereof and had no right to assert the claim— that he was not the real party in interest; the judgment is conclusive as to that; that is necessarily found and passed upon in the judgment of the court; and in all material respects the case supposed is, in our judgment, parallel with the case at bar.   The rights of the bondholders, if judgment had gone against them, to attack it on the ground that the trustees had not authority in the premises and that they did not know of his attempting to exercise such authority, is a question not presented here.   Ordinarily the *cestui que trust* is bound by the judgment against the trustee.   93 U. S., 155; 100 U. S., 605; 123 U. S., 233, 243; 133 U. S., 290.   They claim under this judgment of the court, and therefore they are affirming it.   It is sufficient to say that this company was given opportunity in the foreclosure suit to question the authority of the trustee and it did not do so, and want of authority does not affirmatively appear on the record.   And the glass company also had an opportunity there to assert the defenses and counterclaims which it now attempts to bring forward, and the judgment is as conclusive as to the facts which might have been asserted by the way of defense or counter-claim as it is upon the facts specifically found.   If, however, we should receive and consider this evidence, a majority of us are of the opinion that it does not sustain the contention of the defendants.   The case stands the same, in our judgment, as if the glass company had become a party to this mortgage, as a mortgagor, subsequent to its execution by the original mortgagor, and it therefore not only became the right but it became the duty of the trustee to proceed by all proper methods to the foreclosure of this mortgage, and to the ascertainment and determination of any and every question that might be legitimately determined in an action of foreclosure including the ascertainment and determination of the obligation of the company arising out of its assumption of this debt.   We are cited to Conner v. Bramble, 9 Dec., 516, in support of the proposition that after the foreclosure of a mortgage like this, the trustee has no farther authority in the case and cannot bring an action to recover a personal judgment upon the notes.   But there the question was raised by answer and the court so determine upon the answer.   The question would have been like the one at bar if the right to proceed to a personal judgment had been

Gaw v. Glass Co.

asserted by the trustee and had not been disputed by the defendant, and had been determined by the judgment of the court as claimed by the trustee.

Other reasons might be given why it was proper for the trustee to set forth in the foreclosure suit the assumption of this liability by the company; I will not take time, however, to discuss them, but simply suggest that upon the assumption of this liability with respect to this debt, as between McLean and the glass company, the glass company became the principal debtor and McLean the surety. McLean was a party defendant. The trustee was proceeding to bring to sale the property of McLean which was covered by the mortgage, as well as the property of the glass company so covered. It would have been the right of McLean to set forth, if it had not been set forth in the petition, the facts upon which the law fixed his right as surety and the obligations of the company as a principal. The trustee having done that for him—very properly as we think—to expedite matters, there was no occasion for the defendant McLean to assert it; and the decree of the court seems to have recognized this obligation resting upon the glass company as principal debtor and the right of McLean as surety, in the form of the decree entered.

As I have said, we find ourselves somewhat at variance upon the question of the conclusiveness of this finding as against this collateral attack upon it; but a majority of the court are of the opinion that it has the full force and effect of a valid judgment upon the question, that it is not open to question by the collateral method here attempted, and that it is conclusive against the defenses and counter-claims here sought to be interposed.

Coming to the subject of this claim for taxes we have to say that notwithstanding the fact that there had been no eviction at the time the foreclosure suit was brought on account of the non-payment of taxes, and no payment by the glass company, so that no right of action had accrued under the covenants of the deed, yet under sec. 5780, Rev. Stat., that claim might have been interposed by way of counter-claim, because that suit was, as against the glass company, substantially the enforcement of a purchase money mortgage. That any right that the individual stockholders may have had on account of the fraud of McLean cannot be asserted as against these bonds, since judgment has gone against the company, seems to be decided in Railroad Co. v. Smith et al., 48 Ohio Stat., 219.

Time does not permit us to enter into the discussion of other interesting questions involved in this case. The finding and decision that the judgment in the foreclosure suit is conclusive and not open to this collateral attack, in effect disposes of the whole matter. and therefore the decision will be entered in favor of the bondholders, as prayed for.

*J. W. Lane*, for the plaintiff.

*King & Tracy, C. W. Everett*, and *W. S. Thurstin*, for defendants.